1    ARMOND MARCARIAN, ESQ. (SB# 213883)
Armond@MarcarianLaw.US
2    MARC L. MCCULLOCH, ESQ. (SB# 252526)
Marc@MarcarianLaw.US
3    Marcarian Law Firm
15260 Ventura Boulevard
4    Penthouse Suite 2250
Sherman Oaks, CA  91403
5    Telephone:   (818) 995-8787
Facsimile:    (818) 995-8817
6

7    Attorneys for Plaintiffs
DEMETRIA RODRIGUEZ, *et al.*
8

9    DAVID M. WALSH (SB# 120761)
davidwalsh@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
10   515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA  90071-2228
11   Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705
12   *(Additional counsel on signature page)*

13   Attorneys for Defendants
NDCHEALTH CORPORATION and MCKESSON CORPORATION
14

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| 18  DEMETRIA RODRIGUEZ, NOVA JIMENEZ, HESHMATOLLAH NAYERI, VAHIDEH KARAMIAN, PARVIN MAJIDIAN, SAMANTHA TIKOTIN, individually and on behalf of all others similarly situated, | Case No.: CV 10-3522 VBF (FMOx) **STIPULATION OF SETTLEMENT AND RELEASE** |
| 21            Plaintiffs, | Hon. Valerie Baker Fairbank |
| 22      vs. | |
| 23  NDCHEALTH CORPORATION, a Delaware corporation, and MCKESSON CORPORATION, a Delaware corporation, | |
| 25          Defendants. | |

26

27

28

This Stipulation of Settlement and Release (the "Stipulation") is made and entered into pursuant to Rule 23 of the Federal Rules of Civil Procedure, subject to the approval of the Court, by and among the parties to the above-entitled case, *Demetria Rodriguez, et al., vs. NDCHealth Corporation, et al.*, Case No. CV 10-3522 VBF (FMOx) (the "Litigation"), by plaintiffs Demetria Rodriguez, Nova Jimenez, Heshmatollah Nayeri, Vahideh Karamian, Parvin Majidian, and Samantha Tikotin ("Plaintiffs"), individually and on behalf of the Class Members, and by defendants McKesson Corporation ("McKesson") and NDCHealth Corporation, a subsidiary of McKesson more commonly known as RelayHealth ("NDCHealth") (together, "Defendants"), as well as certain Released Parties as defined herein. Plaintiffs and Defendants are referred to hereafter collectively as the "Parties."

**WHEREAS:**

A.     Plaintiffs have alleged that in or about October and November 2009, Defendants transmitted pharmacy claims data to Target Pharmacy ("Target") that included data from pharmacies other than Target, and that by doing so Defendants used, disclosed, or released Confidential Medical Information relating to Plaintiffs and other Class Members in violation of California's Confidentiality of Medical Information Act ("CMIA") (California Civil Code §§ 56, *et seq.*);

B.     Plaintiffs have asserted claims against Defendants for violation of the CMIA, negligence, unfair competition (California Business & Professions Code §§ 17200, *et seq.*), declaratory relief, and unjust enrichment on behalf of themselves and all similarly situated individuals;

C.     Defendants have denied and continue to deny all of the allegations made by Plaintiffs and deny any and all liability to anyone with respect to the alleged facts or causes of action asserted by Plaintiffs in the Litigation; and

D.     The Parties desire to forever settle, compromise, and release any and all claims, disputes, and controversies, of any kind or nature whatsoever, whether known or unknown, that were raised or could have been raised against Defendants

STIPULATION OF SETTLEMENT
AND RELEASE

that in any way arise out of or relate to the allegations and claims, or the factual predicates underlying the allegations and claims, in the Litigation;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Stipulation, as well as the good and valuable consideration provided for herein, the Parties hereby agree to a full and complete settlement of the Litigation on the following terms and conditions:

**1.     Definitions.**  As used in this Stipulation, the following terms have the meaning specified below.

1.1.    "Administrative Expenses" means the fees of the Settlement Administrator and expenses incurred by the Settlement Administrator for its services in providing the Class Notice, setting up and operating the Settlement Website and Toll-Free Number, verifying whether claimants are members of the Class, and performing other administrative tasks reasonably related to the duties of the Settlement Administrator as described in Section 7.

1.2.    "CAFA Notice" means the notice of the proposed settlement in compliance with the requirements of the federal Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* to be served as described in Section 5.2.

1.3.    "Class" means all persons residing in California who obtained prescription drugs and/or prescription drug-related services from pharmacies other than Target from February 1, 2008, through December 31, 2008, records of which were transferred to Target by NDCHealth in or about October and November 2009. Excluded from the Class are:

(a)     the officers, directors, and employees of any entity which is or has been a defendant in the Litigation (including NDCHealth Corp., McKesson Corp., Etreby Computer Company, Inc., Cerner Corp., Cerner Healthcare Solutions, Inc., and RelayHealth Corp.), members of the immediate

STIPULATION OF SETTLEMENT
AND RELEASE

families of the foregoing, and their legal representatives, heirs, successors and assigns;

(b)     the officers, directors and employees of any parent, subsidiary or affiliate of one or more of the Defendants or of any business entity in which any of the Defendants owns a controlling interest, together with those individuals' immediate family members;

(c)     Counsel for Defendants and their immediate family members.

1.4.    "Class Counsel" means Armond Marcarian, Esq., and Marc L. McCulloch, Esq., of the Marcarian Law Firm, 15260 Ventura Boulevard, Penthouse Suite 2250, Sherman Oaks, California  91403.

1.5.    "Class Member" means a member of the Class who does not submit a valid Request for Exclusion, as described in Section 8.

1.6.    "Class Notice" means the notice of the proposed settlement to be provided to Class Members as set forth in Section 7.2.

1.7.    "Class Representatives" means the Plaintiffs following their appointment as representatives of the Class for Settlement purposes only, as part of the Preliminary Approval Order described in Section 5.1.

1.8.    "Confidential Medical Information" means individually identifiable medical information, as defined in the CMIA, California Civil Code Section 56.05(g), that has been maintained as confidential by the individual.

1.9.    "Counsel for Defendants" means David M. Walsh and the law firm Paul, Hastings, Janofsky & Walker LLP, 515 South Flower Street, 25th Floor, Los Angeles, CA  90071-2228.

1.10.    "Court" means the United States District Court for the Central District of California.

1.11.    "Defendants" means NDCHealth Corporation and McKesson Corporation.

STIPULATION OF SETTLEMENT
AND RELEASE

1.12.  "Effective Date" means the date on which the Final Approval Order becomes final as set forth in Section 5.6.

1.13.  "Fairness Hearing" means the hearing conducted by the Court on a motion for final approval of the Settlement as described in Section 5.5.

1.14.  "Final Approval Order" means the order approving the Settlement and finally implementing the terms of this Stipulation, dismissing the Litigation with prejudice, and entering final judgment, as described in Section 5.6.

1.15.  "Litigation" means *Demetria Rodriguez, et al., vs. NDCHealth Corporation, et al.*, United States District Court for the Central District of California, Case No. CV 10-3522 VBF (FMOx).

1.16.  "McKesson" means McKesson Corporation and its predecessors, successors, controlling shareholders, partners, joint venturers, subsidiaries, affiliates, divisions and assigns.

1.17.  "NDCHealth" means NDCHealth Corporation and its predecessors, successors, controlling shareholders, partners, joint venturers, subsidiaries, affiliates, divisions and assigns.

1.18.  "Notice Documents" means the Class Notice and the other documents and information available on the Settlement Website, including, but not limited to, this Stipulation and the Q&A Form.

1.19.   "Parties" means Plaintiffs and Defendants.

1.20.  "Plaintiffs" means Demetria Rodriguez, Nova Jimenez, Heshmatollah Nayeri, Vahideh Karamian, Parvin Majidian, and Samantha Tikotin. All references to "Class Members" include Plaintiffs, except as indicated.

1.21.  "Preliminary Approval Order" means the proposed order preliminarily approving the terms of the Settlement, as described in Section 5.1.

1.22.  "Q&A Form" means the Question and Answer form relating to the terms of the Settlement and made available on the Settlement Website, as described in Section 7.2.2.

STIPULATION OF SETTLEMENT AND RELEASE

1.23.  "Released Claims" means the claims against the Defendants and other Released Parties that the Plaintiffs and Class Members shall release pursuant to Section 6.1, including Unknown Claims as described in Section 6.1.2.  Released Claims shall consist of every cause of action of every nature and description whatsoever including, but not limited to, any and all manner of actions, causes, and/or causes of action, accounts, agreements, claims, contracts, controversies, covenants, damages, debts, demands, dues, executions, judgments, liabilities, liens, promises, suits, and sums of money, whether known or unknown, existing or that may exist under the laws of California or any other state or territory of the U.S. or under federal law, including, without limitation, statutory, equitable, constitutional, contractual, or common law claims for damages, unpaid costs, penalties, liquidated damages, statutory damages, nominal damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief that were or could have been alleged or asserted by Plaintiffs or any Class Member against any Defendant or other Released Party in the Litigation or in any other court action or before any administrative or governmental body or agency (including any federal or state regulatory commission), tribunal, arbitration panel, or self-regulatory organization on the basis of, connected with, arising out of, or related to, in whole or in part:

1.23.1.  Any and all of the acts, omissions, facts, matters, events, transactions, occurrences and/or circumstances that were directly or indirectly alleged, asserted, described, set forth or referred to in, or related to the Litigation; or

1.23.2.  Any and all of the acts, omissions, facts, matters, events, transactions, occurrences, and/or circumstances, concerning Defendants' alleged transfer to Target of information including, but not limited to, Confidential Medical Information relating to Plaintiffs or Class Members in or about October and November 2009.

1.24. "Released Party" or "Released Parties" means McKesson Corporation, NDCHealth Corporation, Etreby Computer Company, Cerner Healthcare Solutions, Inc., Cerner Corporation, and RelayHealth Corporation, together with their respective affiliates, agents, employees, officers, directors, parents, customers, pharmacies and other contracting parties, clients, attorneys, representatives, advisors, heirs, executors, administrators, predecessors, successors, insurers, accountants, investment advisors, or anyone acting on their behalf.

1.25. "Request for Exclusion" means a request by a Class Member to be excluded from the Class, as described in Section 8.

1.26. "Settlement" means the settlement of the Released Claims as agreed to by the Parties and evidenced by this Stipulation.

1.27. "Settlement Administrator" means the firm, selected by agreement of the Parties, that shall provide notice-related and administrative services required for the Settlement as described in Section 7.

1.28. "Settlement Fund" means the settlement amount of $4,000,000 to be paid pursuant to Section 4.2.

1.29. "Settlement Fund Account" means the account into which the Settlement Fund is to be paid pursuant to Section 4.2.

1.30. "Settlement Website" means the Internet website operated by the Settlement Administrator as described in Section 7.2.2

1.31. "Taxes" means any and all applicable taxes, duties and similar charges imposed by a government authority in any jurisdiction (including estimated taxes, interest or penalties) in connection with (a) income or gains earned by or on the Settlement Fund or (b) distributions of the Settlement Fund, as described in Section 11.

1.32. "Toll-Free Number" means a toll-free telephone number established by the Settlement Administrator as described in Section 7.2.3.

1.33. "Unknown Claims" means the claims described in Section 6.1.2.

STIPULATION OF SETTLEMENT
AND RELEASE

### 2.    Defendants' Denial of Wrongdoing and Liability

2.1.    Defendants deny any wrongdoing whatsoever.  This Stipulation and the Settlement between the Parties shall not be construed or deemed to be evidence of or an admission or concession on the part of any Defendant with respect to any claim, fault, liability, wrongdoing, or damage whatsoever. Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation, and Defendants continue to believe the claims asserted against them in the Litigation are without merit.  Defendants have also denied and continue to deny (a) that Defendants' conduct was covered by the CMIA, (b) that the data transfer alleged in the Litigation violated the CMIA or any other law, (c) that the confidentiality of any alleged Confidential Medical Information relating to Plaintiffs or Class Members was breached, (d) that the data transfer alleged in the Litigation was knowing or negligent, (e) that any Plaintiffs or Class Members have suffered harm or a legally actionable risk of harm, (e) that McKesson can be held liable for the alleged actions of NDCHealth, and (f) that the damages sought in the Litigation are recoverable as a matter of law.

2.2.    Notwithstanding these denials, Defendants have concluded that further conduct of the Litigation would be protracted and expensive and that in light of its cost, risk and uncertainty, it is desirable that the Litigation and any Released Claims (including Unknown Claims) be fully and finally settled and released as set forth in this Stipulation.

### 3.    Plaintiffs' Claims and the Benefits of Settlement

3.1.    Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports those claims.  This Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Plaintiffs that there is any infirmity in the

STIPULATION OF SETTLEMENT
AND RELEASE

claims asserted by Plaintiffs, or any merit whatsoever to any of the contentions and defenses that Defendants have asserted.

3.2.   However, Plaintiffs recognize and acknowledge the expense and length of continuing to pursue the Litigation against Defendants, as well as the uncertainty, risk and difficulties of proof inherent in prosecuting such claims. Plaintiffs have concluded that it is desirable that the Litigation and any Released Claims (including Unknown Claims) be fully and finally settled and released as set forth in this Stipulation.  Plaintiffs and Class Counsel believe the Settlement set forth in the Stipulation confers substantial benefits upon the Class and is in the best interests of the Class.

**4.     The Settlement**

4.1.   Additional Measures to Protect Confidential Medical Information.

4.1.1. NDCHealth shall implement within thirty (30) days after the Effective Date, and maintain for a period of at least three years thereafter, certain measures designed to provide additional protection for Confidential Medical Information as specified in Exhibit A hereto, which is hereby incorporated by reference.

4.1.2. NDCHealth shall provide written confirmation to Class Counsel within seven (7) calendar days after the measures specified in Exhibit A have been fully implemented.

4.1.3. Defendants shall stipulate that Plaintiffs be permitted to amend their operative First Amended Complaint, and Plaintiffs shall file a Second Amended Complaint, substantially in the form attached hereto as Exhibit F.  The Second Amended Complaint shall be substantively identical to the First Amended Complaint, except that it shall include a request for injunctive relief for the benefit of the Class requiring NDCHealth to implement and maintain the measures specified in Exhibit A.

STIPULATION OF SETTLEMENT
AND RELEASE

1       4.2.    The Settlement Fund.

2           4.2.1. Within ten (10) business days after the Effective Date,

3   Defendants shall cause the Settlement Fund of four million dollars ($4,000,000) to

4   be paid into the Settlement Fund Account.

5           4.2.2. Following payment of the items described in Section 7.5

6   of this Stipulation, any remaining funds in the Settlement Fund Account shall be

7   disbursed in full to one or more charitable or public interest organizations that focus

8   their work on patient privacy or medical privacy issues, for the benefit of Class

9   Members.  The public interest organization(s) shall be mutually agreed upon by the

10   Parties or, if the Parties cannot agree, selected by the Court from a list of candidate

11   organizations submitted by the Parties.

12           4.2.3. Except for any incentive payment that may be awarded to

13   the named Class Representatives as described in Section 4.3, no monetary

14   payments shall be made directly to Class Members.

15           4.2.4. Any income earned by the Settlement Fund after it is paid

16   into the Settlement Fund Account shall be part of the Settlement Fund.

17       4.3.    Incentive Awards to Plaintiffs As Class Representatives

18           4.3.1. Class Counsel will request that the Court award the Class

19   Representatives the amount of five thousand dollars ($5,000) each, which request

20   Defendants will not oppose.  Such award, if approved by the Court, will be paid

21   from the Settlement Fund.

22           4.3.2. Any incentive award to the Class Representatives that is

23   approved by the Court shall be paid by the Settlement Administrator using funds

24   from the Settlement Fund Account by wiring said amounts to an account to be

25   designated by Class Counsel.

26           4.3.3. The effectiveness of this Settlement is not conditioned

27   upon the Court's approval of incentive awards for the Class Representatives in any

28   amount.

STIPULATION OF SETTLEMENT
AND RELEASE

**5.      Submission of the Settlement to the Court for Approval**

5.1.    As soon as practicable after execution of the Stipulation, the Parties shall submit the Stipulation together with its exhibits to the Court and shall apply for entry of a Preliminary Approval Order, substantially in the form of Exhibit D hereto.  The application shall request that the Court:

(a)      preliminarily approve the Settlement set forth in the Stipulation;

(b)      preliminarily certify the Class for settlement purposes only;

(c)      preliminarily approve the appointment of Class Counsel for settlement purposes only;

(d)      preliminarily approve Plaintiffs as Class Representatives for settlement purposes only;

(e)      approve the Class Notice attached hereto as Exhibit B and the procedure for notice set forth in Section 7.2;

(f)      approve the appointment of the Settlement Administrator;

(g)      set a date for a Fairness Hearing and order that, once the Class Notice has provided notice of it, the Fairness Hearing may be continued and adjourned by the Court without further notice to the Class (other than notice to Class Counsel);

(j)      order Class Notice to be disseminated as set forth in Section 7.2 and order that Defendants pay the resulting Administrative Expenses subject to their right of reimbursement for Administrative Expenses exceeding one million dollars ($1,000,000) as described in Section 7.3;

(k)      approve the procedure for Class Members to file Requests for Exclusion from the Class and Objections to the Settlement as set forth in Sections 8 and 9;

(l)      order that, pending entry of the Final Approval Order, no Class Member shall directly, through representatives or in any other

-10-

capacity, commence any action or proceeding in any court or tribunal asserting any of the Released Claims against any of the Released Parties.

5.2.    Within ten (10) business days following the Court's entry of the Preliminary Approval Order, Defendants shall cause the Settlement Administrator to serve the CAFA Notice upon the appropriate State official of each State, as needed, and the Attorney General of the United States.  The CAFA Notice shall provide a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1711 et seq.

5.3.    In conjunction with or following the Parties' joint motion for entry of a Preliminary Approval Order, Class Counsel shall file any application for an award of attorneys' fees, costs or expenses.

5.4.    In accordance with the schedule set for the Fairness Hearing in the Preliminary Approval Order, the Parties shall jointly file a motion seeking final approval of the Settlement, entry of the Final Approval Order, and dismissal of the Litigation with prejudice.

5.5.    At the Fairness Hearing, the Court will consider, among other things, (i) whether the proposed Settlement should be finally approved as fair, reasonable, and adequate; (ii) whether the Final Approval Order approving the Settlement and dismissing the Litigation on the merits and with prejudice should be entered; (iii) whether Class Counsel's application for an award of attorneys' fees and costs should be approved; (iv) whether the incentive awards to Plaintiffs as Class Representatives should be approved; and (v) any objections to the Settlement along with any oppositions thereto filed by any of the Parties.

5.6.    If the Court grants the motion for final approval, the Final Approval Order shall provide for final approval of the terms of the Settlement, dismissal of the Litigation in its entirety, with prejudice, and entry of final judgment.  The Final Approval Order shall be deemed final when the period for any

STIPULATION OF SETTLEMENT
AND RELEASE

motions for reconsideration, rehearing, appeals, petitions for certiorari, or the like ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, such Review Proceeding has been fully and finally resolved, either by court action or by voluntary action of any party, without any possibility of a reversal, vacatur or modification of any judicial ruling, order or judgment, including the exhaustion of all proceedings in any remand or subsequent appeal and remand.  Absent an appeal or other attempted review proceeding, the date when the Final Approval Order becomes final is thirty (30) calendar days after its entry.

**6.     Releases and Covenant Not to Sue**

6.1.    Releases.  As part of the consideration for the Settlement, upon the Effective Date, it is agreed that Plaintiffs and all Class Members, and each of them, shall be deemed to have fully and finally released any and all Released Claims, including Unknown Claims, as described in Sections 6.1.1 and 6.1.2. Likewise, Defendants and Released Parties shall be deemed to have jointly and severally provided full and complete releases to Plaintiffs as described in Section 6.1.4.

6.1.1. Release by Class Members.  Upon the Effective Date, each Class Member and his or her respective heirs, beneficiaries, executors, administrators, estates, past and present agents, attorneys, predecessors, successors and assigns, shall forever and by operation of law be deemed to forever release, remise, acquit, satisfy, and discharge each Defendant and any other Released Party from the Released Claims, as defined in Section 1.23, including Unknown Claims, as described in Section 6.1.2.

6.1.2. Release of Unknown Claims.  In connection with this Release, Class Members acknowledge that they are aware that they may hereafter discover facts, claims, and causes of action presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be

true with respect to the matters released herein.  Nevertheless, it is the purpose of this Stipulation and the intention of the Class Members to settle and release all such matters, and all actions, causes, causes of action, claims, and Unknown Claims relating to the subject matter of the Litigation, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action). The Class Members expressly understand and agree that this Stipulation releases all claims arising prior to the execution of the Stipulation of every nature and kind whatsoever, whether known to them or not.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiffs and each of the Class Members shall be deemed to have, and by operation of the Final Approval Order shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code Section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Parties further stipulate and agree that, upon the Effective Date, Plaintiffs and each of the Class Members shall be deemed to have, and by operation of the Final Approval Order shall have, expressly waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by any law of any state or territory of the U.S., or principle of common law, which is similar, comparable, or equivalent to California Civil Code Section 1542.

6.1.3. Effectiveness of Notice.  In light of the notice to be given to the Class Members, and subject to Court approval, Class Members who do not file valid and timely Requests for Exclusion from the Class will be bound by this Stipulation and all of their claims, whether known or unknown, shall be dismissed with prejudice and released, whether or not they received notice of the Litigation or

the Settlement.  The releases and agreements contained in this Stipulation and the Exhibits hereto shall apply to and bind all Class Members who do not file valid and timely Requests for Exclusion from the Class as described in Section 8.

6.1.4. Release by Defendants and Released Parties.  Upon the Effective Date, Defendants, Released Parties, and each of their respective officers, directors, agents, subsidiaries, parent companies and affiliates, shall forever and by operation of law shall be deemed to forever release, remise, acquit, satisfy, and discharge Plaintiffs, Class Counsel, and their agents and attorneys from any claims or liabilities arising out of the institution, prosecution or settlement of the Litigation, including but not limited to attorneys' fees, litigation costs and expenses, except for claims to enforce the Settlement or this Stipulation.

6.2.   Covenant Not To Sue.  By not filing a valid Request for Exclusion from the Class, each Class Member expressly agrees and covenants that he or she, acting individually or together, shall not seek to institute, maintain, prosecute, sue, or assert in any action or proceeding any action, cause of action, or claim on the basis of, connected with, arising out of, or related to, in whole or in part, any of the Released Claims, including Unknown Claims.  Nothing herein shall preclude any action to enforce the terms of this Stipulation.

**7.     Administration of the Settlement and Notice to the Class**

7.1.   Settlement Administrator.  The Settlement Administrator shall be selected by agreement of the Parties, subject to approval by the Court, and shall be responsible for performing the following tasks, in accordance with the terms of this Stipulation and the Court's order(s):

(a)     arranging for and overseeing publication of the Class Notice;

(b)     creating and maintaining the Settlement Website and Toll-Free Number through which information about the Settlement and copies of the Stipulation can be obtained;

(c)     receiving Requests for Exclusion from the Class and compiling

-14-

1        records relating to those Requests for Exclusion;

2        (d)      receiving Objections to the Settlement from Class Members and

3                 compiling records relating to those Objections;

4        (e)      distributing the Settlement Fund in accordance with this

5                 Stipulation and the orders of the Court;

6        (f)      any other tasks reasonably required to effectuate the foregoing.

7        7.2.     Notice to the Class.  Class Members shall be notified of the

8   proposed Settlement by the Class Notice and through the Settlement Website and

9   Toll-Free Number.

10              7.2.1. Publication of the Class Notice.  Within thirty (30) days

11  after the entry of the Preliminary Approval Order, Defendants, through the

12  Settlement Administrator, will cause a Class Notice, substantially in the form

13  attached hereto as Exhibit B to be published in the manner described in Exhibit E

14  (the "Notice Plan").  The Class Notice shall also be published on the Settlement

15  Website.  The Class Notice shall highlight the terms of the Settlement and provide

16  instructions for obtaining a copy of the complete Stipulation, requesting exclusion

17  from the Class, and objecting to the Settlement.  The Class Notice shall explain the

18  manner in which visitors to the Settlement Website will be able to determine

19  whether they are Class Members, and shall also provide the Toll-Free Number for

20  the same purpose.

21              7.2.2. The Settlement Website.  The Settlement Administrator

22  shall set up and maintain the Settlement Website.  The Settlement Website will

23  allow visitors to access and print a complete copy of the Class Notice, this

24  Stipulation, and the Q&A Form, and to determine whether they are Class Members

25  once they have provided appropriate identifying information.  The Settlement

26  Website shall be operational and available to Class Members from the date the

27  Class Notice is published, through the Effective Date

28              7.2.3. The Toll-Free Number.  The Settlement Administrator

STIPULATION OF SETTLEMENT
AND RELEASE

1    shall set up and maintain the Toll-Free number, which shall allow callers to request

2    copies of the Class Notice and the Stipulation and to determine whether they are

3    Class Members once they have provided appropriate identifying information.  The

4    Toll-Free Number will be operational from 8:00 a.m. to 6:00 p.m., Pacific time,

5    Monday through Friday, and shall remain in operation from the date the Class

6    Notice is published, through the Effective Date.

7                    7.2.4. Certification of the Class Notice.  Within fourteen (14)

8    days after publication of the Class Notice, Defendants shall (i) file or cause to be

9    filed with the Court a declaration certifying that the Class Notice has been timely

10   published and that the Settlement Website and Toll-Free Number have been set up

11   and are operational; and (ii) serve on Class Counsel a copy of the declaration filed

12   with the Court.

13                7.3.    Payment of Administrative Expenses

14                    7.3.1. The Administrative Expenses incurred by the Settlement

15   Administrator shall be paid by Defendants, provided, however, that Defendants

16   shall be entitled to reimbursement from the Settlement Fund for Administrative

17   Expenses in excess of one million dollars ($1,000,000), as described in Section 7.5.

18                    7.3.2. The Settlement Administrator shall provide Counsel for

19   Defendants with itemized invoices for all Administrative Expenses, which shall be

20   paid according to the Settlement Administrator's routine business practices.  The

21   Settlement Administrator shall also provide Class Counsel with copies of said

22   invoices for informational purposes only.

23                7.4.    Handling of Requests for Exclusion and Objections

24                    7.4.1. Requests for Exclusion and Objections shall be submitted

25   to the Settlement Administrator as described in Sections 8 and 9.

26                    7.4.2. The Settlement Administrator shall, on a weekly basis,

27   provide Class Counsel and Counsel for Defendants with copies of all Requests for

28   Exclusions and Objections received by the Settlement Administrator.

7.5.    Distribution of the Settlement Fund

        7.5.1. The Settlement Administrator shall distribute the funds in the Settlement Fund Account in the following order, no later than five (5) business days after the funding of the Settlement Fund Account as set forth in Section 4.2.1:

    (a)    first, the Settlement Administrator shall reimburse Defendants for any Administrative Expenses they have paid in excess of $1,000,000 as described in Section 7.3;

    (b)    next, the Settlement Administrator shall pay to Defendants an amount sufficient to reimburse them for any Taxes and tax-related expenses,  as described in Section 11.3, or, at the Settlement Administrator's discretion, shall reserve an amount of the Settlement Fund sufficient to pay Taxes and tax-related expenses as described in Section 11 and shall provide Class Counsel with an accounting of any amounts so disbursed or reserved;

    (c)    next, the Settlement Administrator shall pay to Plaintiffs as Class Representatives any incentive award ordered by the Court, as described in Section 4.3;

    (d)    next, the Settlement Administrator shall pay to Class Counsel any award of attorneys' fees, costs, or expenses ordered by the Court, as described in Section 10;

    (e)    finally, the Settlement Administrator shall pay the remainder of the Settlement Fund to the charitable organization(s) that have been selected pursuant to Section 4.2.2.

        7.5.2.      In the event that the Stipulation is not approved, or is terminated, cancelled, or fails to become effective for any reason, the Settlement Administrator shall refund the Settlement Fund (including accrued interest), less Administrative Expenses, Taxes, and tax expenses due and owing, to Defendants or

1   their designees within 10 business days of the Stipulation's non-approval,

2   termination, cancellation, or failure to become effective.

3       **8.**    **Requests for Exclusion from the Class**

4       8.1.    Requests for Exclusion.  Any Class Member, except for

5   Plaintiffs, may submit a request to be excluded from the Class according to the

6   following procedure.

7       8.2.    Procedure for Requesting Exclusion.  To request exclusion from

8   the Class, a Class Member must mail a written Request for Exclusion to the address

9   of the Settlement Administrator (as provided in the Class Notice), which must be

10  personally signed by the Class Member, and postmarked no later than thirty (30)

11  days following the publication of the Class Notice.  Requests for Exclusion

12  containing a name and signature that do not match the name of the Class Member

13  on file with the Settlement Administrator are invalid and shall be considered void.

14  Every Class Member who does not timely and properly submit a Request for

15  Exclusion from the Class shall be bound by all proceedings, orders, and judgments

16  in the Litigation, even if he or she has pending, or subsequently initiates, litigation

17  against Defendants relating to the Released Claims.  A Class Member who submits

18  a valid Request for Exclusion will be excluded entirely from the Class and,

19  therefore, from participation in the Settlement.  All Class Members agree that the

20  satisfaction and release of all the Released Claims against Defendants, as well as

21  entry of the Final Approval Order, shall be binding upon all Class Members.

22      8.3.    Voiding of Settlement Based on Number of Exclusions.  If the

23  number of Class Members who submit valid Requests for Exclusion exceeds 5,000,

24  this Stipulation shall at the sole discretion of Defendants be null and void.  In that

25  event, the Parties will be relieved of any obligation under this Stipulation or the

26  Settlement.

27      **9.**    **Objections to the Settlement**

28      9.1.    Objections to Settlement.  Any Class Member, except for

-18-

STIPULATION OF SETTLEMENT
AND RELEASE

Plaintiffs, may object to the fairness, reasonableness, or adequacy of this Stipulation or the Settlement.

9.2.    Procedure for Objecting to the Settlement.  To object to the fairness, reasonableness, or adequacy of this Stipulation or the Settlement, a Class Member must mail the Settlement Administrator a written statement of objection no later than thirty (30) days after the publication of the Class Notice.  The Settlement Administrator or the Parties shall file such Objections with the Court in connection with the Parties' motion for final approval of the Settlement.  The statement of objection must set forth the specific reason(s) for the Class Member's objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of the objection.  A Class Member may object either on his or her own or through an attorney hired at the Class Member's expense.  Any Class Member who objects, as described herein, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Stipulation or the Settlement.  A Class Member or his or her attorney intending to make an appearance at the Fairness Hearing must:  (a) file a notice of appearance with the Court no later than twenty-one (21) days prior to the Fairness Hearing, or as the Court may otherwise direct; and (b) serve a copy of such notice of appearance on both Counsel for Defendants and Class Counsel.  Any Class Member who fails to comply with the provisions of this Section shall waive and forfeit any and all rights the Class Member may have to appear separately and/or to object, and shall be bound by all the terms of the Stipulation and by all proceedings, orders, and judgments in the Litigation.

**10.    Class Counsel's Attorneys' Fees and Expenses**

10.1.   The Parties negotiated the provisions relating to attorneys' fees, costs, and expenses only after reaching agreement upon all other material terms of the Settlement and this Stipulation.

STIPULATION OF SETTLEMENT
AND RELEASE

10.2.   As a result of such negotiation, the Parties have agreed that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees, costs, and expenses up to the total amount set forth in Section 10.3 below.  The amount to be awarded is meant to be inclusive of all fees, costs and expenses of Class Counsel, past and future, in connection with the Litigation.  Class Counsel represents that they will not seek attorneys' fees, costs, or expenses relating to the Litigation in any lawsuit or forum other than the Litigation.

10.3.   Defendants will not object to Class Counsel's application for an award of attorneys' fees, costs, and expenses of up to one million, two hundred and fifty thousand dollars ($1,250,000), such amount representing 25% of the sum of the Settlement Fund and the maximum amount of Administrative Expenses payable by Defendants as described in Section 7.3.1.  The amount of any award of attorneys' fees, costs, and expenses shall be determined by the Court and shall be paid from and not be in addition to the Settlement Fund.

10.4.   Any award of attorneys' fees, costs, or expenses to Class Counsel ordered by the Court shall be paid by the Settlement Administrator from the Settlement Fund Account as described in Section 7.5, by wiring the awarded amount to an account to be designated by Class Counsel.

10.5.   To the extent any application is made to any court by any person other than Class Counsel seeking an award of attorneys' fees, costs, or expenses relating to the Settlement, the Litigation, or any claims made therein, Defendants shall have the right to oppose such application.  Moreover, if Class Counsel seeks attorneys' fees, costs, or expenses relating to this Litigation in any other lawsuit or forum besides the Litigation, Defendants shall have the right to oppose such application.  Defendants shall also have the right to oppose any application for attorneys' fees, costs, and expenses by Class Counsel to the extent it exceeds the amount in Section 10.3.

10.6.   The effectiveness of this Settlement is not conditioned upon the

STIPULATION OF SETTLEMENT
AND RELEASE

Court's approval of Class Counsel's application for attorneys' fees, costs, or expenses in any amount.

10.7.  The Released Parties and Counsel for the Defendants shall have no responsibility for or liability whatsoever with respect to any payment to Class Counsel from the Settlement Fund.

**11.   Taxes**

11.1.  The Parties agree that the Settlement Fund Account is intended to be and will be at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B 1.  In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of Section 11 of this Stipulation, including, if necessary, the "relation back election" (as defined in Treas. Reg. §1.468B 1(j)(2)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under §1.468B of the Internal Revenue Code of 1986, as amended (the "Code").  It shall be the responsibility of the Settlement Administrator to cause the timely and proper preparation and delivery of the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

11.2.  For the purpose of §1.468B of the Code and the Treasury regulations thereunder, the Settlement Administrator shall be designated as the "administrator" of the Settlement Fund.  The Settlement Administrator shall cause to be timely and properly filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B 2(k)). Such returns (as well as the election described in Section 11.1 hereof) shall be consistent with Section 11.3 hereof and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Section 11.3.

-21-

11.3.  All Taxes arising in connection with income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants or the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, shall be paid by the Settlement Administrator from the Settlement Fund in accordance with Section 7.5.1(b).

11.4.  Any expenses reasonably incurred by the Settlement Administrator in carrying out the duties described in Section 11, including fees of tax attorneys and/or accountants, shall be considered Administrative Expenses to be paid in accordance with Section 7.3.1.

11.5.  Any person or entity that receives a distribution from the Settlement Fund pursuant to Section 7.5.1 (except for a distribution to Defendants to reimburse them for  Taxes  pursuant to Sections 7.5.1(b), 11.3) shall be solely responsible for all Taxes and tax-related expenses owed or incurred by that person or entity by reason of that distribution.  Such Taxes and tax-related expenses shall not be paid from the Settlement Fund.

11.6.  Except as stated in Section 11.5, in no event shall Defendants or the Released Parties have any responsibility or liability for Taxes or tax-related expenses arising in connection with the payment or distribution of the Settlement Fund, and the Settlement Fund shall indemnify and hold each of the Defendants and their Released Parties harmless for such Taxes and tax-related expenses (including, without limitation, Taxes and tax-related expenses payable by reason of any such indemnification).

**12.    Public Comments Regarding The Class Action or Settlement**

12.1.  The Parties, Class Counsel and Counsel for Defendants agree to keep confidential all positions, assertions, and offers made during settlement negotiations relating to the Litigation, the Settlement and this Stipulation, except

that they may discuss the negotiations with Class Members and Defendants' insurer(s).

12.2.   Except as provided below, the Parties and their counsel may disclose only information provided in the Notice Documents.

12.3.   The Parties and their counsel may provide copies of the Preliminary Approval Order, the Final Order, any order awarding attorneys' fees, costs, and expenses, or any order awarding Plaintiffs incentive payments.

12.4.   The Parties and their counsel are not prohibited from discussing the facts of the case, the handling of the case, or the relief obtained with attorneys involved in the Litigation, the Court, the Class Members, or any experts who provide opinions in the Litigation on the reasonableness of attorneys' fees.

12.5.   Notwithstanding anything in this Section 12, all necessary disclosures may be made on financial statements; to accountants and auditors; in public filings; to government regulatory agencies or their representatives in response to direct inquiries or as otherwise required by law; and to any local, state, or federal taxing authority.

12.6.   Nothing in this Stipulation restricts Class Counsel's ability to discuss the Litigation with Class Members or their representatives to the extent necessary to represent Class Members in connection with this Settlement.

12.7.   Nothing in this Stipulation restricts Defendants' ability to discuss the Litigation, the Stipulation, and/or the Settlement with the Released Parties.

12.8.   Consistent with the above, the Parties and their counsel may characterize the Settlement and/or its provisions in a positive manner.

12.9.   The Parties and their counsel agree that, if any representative of the media or the press should inquire as to the Litigation, the Settlement, the Stipulation, or any related matter, the response by such Party shall be confined to the agreed-upon statement set forth in Exhibit C hereto.   Under no circumstances

STIPULATION OF SETTLEMENT
AND RELEASE

1  shall Class Counsel, Counsel for Defendants, or any of the Parties issue any press

2  release concerning the Litigation, the Settlement or the Stipulation.

3         12.10.   The Parties and their counsel further agree that they will not at

4  any time publicly disparage or encourage or induce others to publicly disparage any

5  of the other Parties or the Released Parties or disparage them in writing.

6      **13.**    **Termination; Voidability of Stipulation.**  All terms, conditions, and

7  Exhibits are material to this Stipulation and have been relied upon by the Parties in

8  entering into this Stipulation.  If any Party petitions the Court for a modification,

9  addition, or alteration of any term, condition, or Exhibit, and if the Court on such

10  request or *sua sponte* modifies, adds to or alters any of the terms, conditions, or

11  Exhibits of this Stipulation ("Modification Order"), the Stipulation shall become

12  voidable and of no further effect upon the filing with the Court of a Notice of

13  Withdrawal from Settlement by the opposing Party or Parties within ten (10) days

14  of entry of the Modification Order.

15      **14.**    **Use of Settlement and Stipulation.**  The Settlement and this

16  Stipulation are entered into for purposes of settlement of the Litigation only.

17  Unless necessary to enforce the terms of the Settlement, this Stipulation, the

18  Settlement, and any settlement communications between the Parties whether prior

19  to, in connection with, or after execution of the Stipulation, shall not be used in the

20  Litigation or any other proceeding for any purpose whatsoever, unless the Parties

21  mutually agree in writing to the contrary.  Nothing in this Stipulation will be

22  construed to prevent Defendants and/or the Released Parties from filing the

23  Stipulation and/or the Final Approval Order in any action that may be brought

24  against them to support a defense, claim or counterclaim based on principles of res

25  judicata, collateral estoppel, release, good faith settlement, judgment bar or

26  reduction, or any other theory of claim preclusion or issue preclusion or similar

27  defense or counterclaim.

28      **15.**    **When Stipulation Becomes Effective.**  This Stipulation shall become

1  effective upon its execution by all Parties and approval as to form by Class Counsel

2  and Counsel for Defendants.  If any provision of this Stipulation is held by the

3  Court or any court of competent jurisdiction to be void, voidable, unlawful, or

4  unenforceable, the remaining portions of this Stipulation will remain in full force

5  and effect, subject to Section 13.

6      **16.    Miscellaneous Provisions.**

7          16.1.  Return or Destruction of Confidential Discovery Materials.

8  Following the Effective Date, each Party shall, at its election, either return or

9  destroy all documents produced to it in discovery that have been designated as

10  "confidential" or "highly confidential" by the producing Party, as well as all copies,

11  extracts, abstracts, charts and summaries of such documents.  If a Party elects to

12  destroy such discovery material, it shall certify in writing to the producing Party

13  that it has done so.

14          16.2.  Cooperation Between the Parties.  The Parties shall cooperate

15  fully with each other, and shall use their best efforts to obtain the Court's

16  preliminary and final approval of this Stipulation and the Settlement.  It is the

17  Parties' desire that the Litigation and any Released Claims be fully and finally

18  settled.  If the Settlement is not approved by the Court, or if on appeal, the Final

19  Approval Order is set aside, or if final approval is not obtained for any reason, then

20  the Settlement shall become null and void.  In that event, the Parties agree to

21  negotiate in good faith in an attempt to reach a new mutually agreeable settlement.

22          16.3.  Written Notice to Parties.  Where any Party's exercise of any

23  right or discharge of any responsibility under this Stipulation requires written

24  notice, the Party shall serve such written notice on all other Parties.

25          16.4.  Governing Law.  This Stipulation is intended to, and shall be

26  governed exclusively by, the laws of the State of California, without regard to

27  choice-of-law principles, except as otherwise provided for herein.

28          16.5.  Continuing Jurisdiction.  The Court shall retain jurisdiction over

STIPULATION OF SETTLEMENT
AND RELEASE

1   the interpretation and implementation of this Stipulation, as well as any and all

2   matters arising out of, or related to, the interpretation or implementation of this

3   Stipulation.

4        16.6.   Venue.  Any and all actions or claims against any of the Parties

5   arising out of this Stipulation, including, without limitation, the enforcement,

6   interpretation, breach, or attempted rescission of this Stipulation, shall be brought

7   exclusively in the United States District Court for the Central District of California.

8        16.7.   Entire Agreement.  No representations, warranties, or

9   inducements have been made to any of the Parties to this Stipulation, other than

10   those representations, warranties, and covenants contained in this Stipulation.  This

11   Stipulation and the Exhibits attached hereto integrate and constitute the entire

12   agreement between the Parties with regard to the subject matter contained herein,

13   and all prior and contemporaneous negotiations and understandings between the

14   Parties shall be deemed merged into this Stipulation.  No waiver, modification, or

15   amendment of the terms of this Stipulation, made before or after the Court's

16   approval of this Stipulation, shall be valid or binding unless in writing, signed on

17   behalf of all Parties, and then only to the extent set forth in such written waiver,

18   modification, or amendment.

19        16.8.   Construction of the Stipulation.  The Parties have negotiated all

20   the terms and conditions of this Stipulation and of the Exhibits at arm's-length.

21   The determination of the terms and conditions of this Stipulation has been by

22   mutual agreement of the Parties.  Each Party participated jointly in the drafting of

23   this Stipulation, and therefore the terms of this Stipulation are not intended to be

24   construed against any Party by virtue of draftsmanship.

25        16.9.     Authority.  The individual(s) signing this Stipulation on behalf

26   of NDCHealth Corporation, McKesson Corporation, Cerner Corporation, Cerner

27   Healthcare Solutions, Inc., and Etreby Computer Company hereby represent and

28   warrant that they have the power and authority to enter into this Stipulation on

STIPULATION OF SETTLEMENT
AND RELEASE

behalf of Defendants and Released Parties, on whose behalf they have executed this Stipulation, as well as the power and authority to bind Defendants and Released Parties to the Settlement.

16.10.   No Waiver.  Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions of this Stipulation, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Stipulation.

16.11.   Counterparts.  The Parties may execute this Stipulation in counterparts, and execution in one or more counterparts shall have the same force and effect as if all Parties had signed the same instrument.

16.12.   No Third-Party Beneficiaries Other Than Class Counsel and the Released Parties.  This Stipulation shall not be construed to create rights in, or to grant remedies to, or delegate any duty, obligation, or undertaking established herein, to any third party as a beneficiary to this Settlement, except for Class Counsel and the Released Parties.

16.13.   Further Acts.  Each Party, upon the request of the other Parties hereto, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Stipulation.

16.14.   Captions.  The captions or headings of the sections and paragraphs of this Stipulation have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Stipulation.

16.15.   Facsimile Signatures.  Any Party may execute this Stipulation by signing their name on the designated signature block below, and transmitting that signature page via facsimile to Class Counsel and Counsel for Defendants.  Any signature made and transmitted by facsimile in executing this

STIPULATION OF SETTLEMENT
AND RELEASE

1   Stipulation shall be deemed an original signature for purposes of this Stipulation,

2   and shall be binding upon the Party transmitting their signature by facsimile.

3        16.16.   Conflicts.  In the event of conflict between this Stipulation

4   and any other document prepared pursuant to the Settlement, the terms of the

5   Stipulation supersede and control.

6        16.17.   Singular/Plural.  The plural of any defined term includes the

7   singular, and the singular of any defined term includes the plural, as the case may

8   be.

9        16.18.   Any/All.  The term "any" includes the term "all" and the

10  term "all" includes the term "any."

11       16.19.   Reasonable Extensions of Time.  Without further order of the

12  Court, the Parties may agree to reasonable extensions of time to carry out any of the

13  provisions of this Stipulation.

14       16.20.   No Prior Assignment.  The Parties represent, covenant, and

15  warrant that they have not directly or indirectly assigned, transferred, encumbered,

16  or purported to assign, transfer, or encumber to any person or entity any portion of

17  any liability, claim, demand, action, cause of action or right released and discharged

18  in this Stipulation.  Each of the Plaintiffs agrees to indemnify, defend, and hold

19  harmless Defendants from any claims, expenses, and liabilities (including

20  reasonable attorneys' fees and costs) arising from any prior assignment or transfer

21  subject to this paragraph.

22       So stipulated and agreed.

23

24  Date:  December 8, 2010          DEMETRIA RODRIGUEZ

25

26

27

28

Date: December 8, 2010

HESHMATOLLAH NAYERI

_____

Date: December ___, 2010

NOVA JIMENEZ

_____

Date: December 8, 2010

VAHIDEH KARAMIAN

_____

Date: December 7, 2010

PARVIN MAJIDIAN

_____

Date: December 9, 2010

SAMANTHA TIKOTIN

_____

Date: December ___, 2010

NDCHEALTH CORPORATION

By:_____

Name: _____

Title:_____

-29-

Date: December __, 2010        HESHMATOLLAH NAYERI

Date: December 8, 2010        NOVA JIMENEZ

Date: December __, 2010        VAHIDEH KARAMIAN

Date: December __, 2010        PARVIN MAJIDIAN

Date: December __, 2010        SAMANTHA TIKOTIN

Date  December __, 2010        NDCHEALTH CORPORATION

By: _____

Name: _____

Title: _____

-29-

STIPULATION OF SETTLEMENT
AND RELEASE

Date:  December __, 2010                HESHMATOLLAH NAYERI

_____

Date:  December __, 2010                NOVA JIMENEZ

_____

Date:  December __, 2010                VAHIDEH KARAMIAN

_____

Date:  December __, 2010                PARVIN MAJIDIAN

_____

Date:  December __, 2010                SAMANTHA TIKOTIN

_____

Date:  December __, 2010                NDCHEALTH CORPORATION

                                        By: _Willie C. Bogan_____

                                        Name: _Willie C Bogan____

                                        Title: _VICE PRESIDENT & SECRETARY_

-29-

1  
2  

Date:  December _9_, 2010

3  
4  
5  
6  

McKESSON CORPORATION

By: _____

Name: __NIGEL A. REES__

Title: __VICE PRESIDENT & CONTROLLER__

7  
8  

Date:  December __, 2010

CERNER CORPORATION

9  

By:_____

10  

Name: _____

11  
12  

Title:_____

13  
14  

Date:  December __, 2010

CERNER  HEALTHCARE SOLUTIONS, INC.

15  
16  

By:_____

17  

Name: _____

18  
19  

Title:_____

20  
21  

Date:  December __, 2010

ETREBY COMPUTER COMPANY

22  
23  

By:_____

24  

Name: _____

25  
26  

Title:_____

27  
28  

-30-

STIPULATION OF SETTLEMENT AND RELEASE

1  Date:  December __, 2010          McKESSON CORPORATION

2

3                                    By:_____
                                     Name: _____
4

5                                    Title:_____

6

7  Date:  December 7, 2010           CERNER CORPORATION

8

9                                    By: _____

10                                   Name: _MARC E. ELKINS_____

11
                                     Title: VICE PRESIDENT & ASSISTANT
12                                                      SECRETARY

13
   Date:  December 7, 2010           CERNER  HEALTHCARE
14                                    SOLUTIONS, INC.

15

16                                   By:_____

17                                   Name: _MARC E. ELKINS_____

18
                                     Title: ASSISTANT SECRETARY
19

20                                   ETREBY COMPUTER COMPANY
21  Date:  December 7, 2010

22

23                                   By:_____

24                                   Name: _Magdy Eletreby_____

25                                   Title: _Former CEO_____

26

27

28

-30-                      STIPULATION OF SETTLEMENT
                                  AND RELEASE

**Approved as to Form and Content:**

Dated:  December 10, 2010

PAUL, HASTINGS, JANOFSKY & WALKER LLP
David M. Walsh, Esq.
515 South Flower Street, 25th Floor
Los Angeles, California  90071


_____/s/ David M. Walsh_____
David M. Walsh


Dated:  December 10, 2010

MARCARIAN LAW FIRM
Armond Marcarian, Esq.
Marc McCulloch, Esq.
15260 Ventura Boulevard
Penthouse Suite 2250
Sherman Oaks, CA  91403


_____/s/ Armond Marcarian_____
Armond Marcarian, Esq.
Marc McCulloch, Esq.


LEGAL_US_W # 66182448.6

STIPULATION OF SETTLEMENT
AND RELEASE

# Exhibit A

## *Rodriguez, et al. v. NDCHealth Corporation and McKesson Corporation*
## Case No. CV 10-3522 VBF

## Exhibit A – Additional Actions

This document describes additional actions ("Additional Actions") that
Defendant NDCHealth Corp. ("NDCHealth") agrees to implement upon final
approval of any settlement of *Rodriguez v. NDCHealth Corp.*  The Additional
Actions will be implemented in connection with NDCHealth's handling of
pharmacy billing claims data containing individually identifiable information
regarding a patient's medical history, mental or physical condition, or treatment
on behalf of its pharmacy customers (the "Data").  The date of final court
approval of any settlement of *Rodriguez v. NDCHealth Corp.* is referred to herein
as the "Effective Date."

1)   **Automated Code Verification Tool**
- NDCHealth will develop and implement an automated
  verification tool designed to identify and generate reports
  regarding the source(s) of Data to be included in a Data
  delivery to an NDCHealth pharmacy customer (the
  "Automated Code Verification Tool").

- Following the Effective Date, NDCHealth will utilize the
  Automated Code Verification Tool in the development of
  all new Data deliveries to NDCHealth's pharmacy
  customers.

2)   **Code Review**
- NDCHealth will develop and implement a system whereby
  the computer code written to gather Data for a Data
  delivery to an NDCHealth pharmacy customer is reviewed
  by a Senior Developer/Software Architect for appropriate
  filtering and utilization of the Automated Code Verification
  Tool (a "Code Review").

- Following the Effective Date, NDCHealth will utilize a
  Code Review in the development of all new Data deliveries
  to NDCHealth's pharmacy customers.

3)     **Requirements Review**

- NDCHealth will develop and implement a system whereby each new request for a Data delivery submitted by an NDCHealth pharmacy customer will be discussed in a meeting of personnel responsible for the development of that Data delivery, for the purpose of ensuring consensus regarding the scope of the Data to be provided to the customer (a "Requirements Review").

- Following the Effective Date, NDCHealth will utilize a Requirements Review in the development of all new Data deliveries to NDCHealth's pharmacy customers.

4)     **Process Checklist**

- NDCHealth will develop and implement a system whereby for each new Data delivery to an NDCHealth pharmacy customer, one or more designated members of NDCHealth's management will confirm that an Automated Code Verification Tool, a Code Review, and a Requirements Review were utilized in the development of the Data delivery (the "Process Checklist").

- Following the Effective Date, NDCHealth will utilize a Process Checklist in the development of all new Data deliveries to NDCHealth's pharmacy customers.

5)     **Application of the Additional Actions to a New Business**

- In the event that NDCHealth acquires another business or operation that handles pharmacy billing claims data containing individually identifiable information regarding a patient's medical history, mental or physical condition, or treatment on behalf of pharmacy customers (a "New Business"), NDCHealth will make reasonable efforts to ensure that, within a reasonable time, the foregoing Additional Actions are utilized in the development of all new Data deliveries by the New Business to its, or NDCHealth's, pharmacy customers.

LEGAL_US_W # 66388655.2

Exhibit B

**Rodriguez, et al. v. NDCHealth Corporation and McKesson Corporation**

Case No. CV 10-3522 VBF

**Exhibit B – Class Notice**

# If You Have or Had Medi-Cal or Medicare and Filled a Prescription in 2008 at a Pharmacy *Other* Than Target

## Your rights could be affected by a class action settlement

A settlement has been proposed in a class action lawsuit called *Rodriguez v. NDCHealth Corporation, et al.* (Case No. 2:10-CV-3522), which is pending in the United States District Court for the Central District of California.

### Who Is Included?
You are included in the Settlement as a "Class Member" if you live in California and (1) you obtained prescription drugs or related services from pharmacies other than Target Pharmacy between February 1 and December 31, 2008 (a "Non-Target Prescription"), (2) you were a Medi-Cal or Medicare cardholder at the time, and (3) you were included in a group of people whose Non-Target Prescription claim information was transferred to Target Pharmacy by a company called RelayHealth in October and November 2009. You can find out if you were included in this group by contacting the Settlement Administrator.

### What Is The Case About?
The lawsuit claims that NDCHealth Corporation, more commonly known as RelayHealth, and McKesson Corporation (both called the "Defendants") violated California law by transferring the Non-Target Prescription claim information to Target Pharmacy. Defendants deny that they broke the law and strongly deny they did anything wrong.

### Summary of the Settlement
Under the Settlement, which must be approved by the court, RelayHealth will put additional protections in place to help prevent future transfers of confidential medical information to unauthorized persons or companies. A list of the protections RelayHealth will put in place can be found at www.nametobedetermined.com or by calling 1-888-270-9628.

The Defendants have also agreed to pay $4,000,000 into a fund for patient and medical privacy purposes. After paying certain administrative fees and expenses, including court-approved payments to the class representatives and court-approved attorneys' fees and expenses (which will not be more than 25% of the total of the $4,000,000 plus the administrative expenses), the money will be distributed to one or more organizations that focus on patient or medical privacy issues.

### Can I Get Money from the Settlement?
No, there is no money available to individual Class Members.

### Do I Have a Lawyer?
Yes. The court has appointed lawyers to represent Class Members ("Class Counsel"). You will not be charged for these lawyers. The lawyers appointed as Class Counsel are: Marcarian Law Firm, 15260 Ventura Boulevard, Suite 2250, Sherman Oaks, California 91403, (818) 995-8787.

### What Should I Do?
You should get more information from the Settlement Administrator and make a decision

## Rodriguez, et al. v. NDCHealth Corporation and McKesson Corporation

### Case No. CV 10-3522 VBF

### Exhibit B – Class Notice

about your legal rights.  As a Class Member, you have three options.

(1)      You can do nothing.  You will remain a Class Member.  You will be bound by the court's decisions in the lawsuit.  You will not have the right to sue separately about the issues in the lawsuit.

(2)      You can remain a Class Member but object to the Settlement. You will be bound by the court's decisions in the lawsuit.  To object you must send, via first-class mail or overnight delivery, a written letter identifying yourself as a Class Member and explaining why you object.  Your objection must be sent to the Settlement Administrator (not the court) and be postmarked no later than April 23, 2011.  You may also choose to pay for and be represented by a lawyer who may send the objection for you.

(3)      You can exclude yourself from the Settlement completely and preserve your right to file a separate lawsuit by mailing a request form to the Settlement Administrator (not the Court).  The form is available from the Settlement Administrator and must be postmarked no later than April 23, 2011.

### Fairness Hearing

The court will have a hearing on June 13, 2011 at 1:30 p.m. to decide whether to approve the Settlement.  Class Counsel will represent the Class Members at the hearing or, if you object to the Settlement, you can have your own lawyer represent you at the Fairness Hearing at your expense.

**For more information, contact the Settlement Administrator:**
Visit: www.nametobedetermined.com
Call: 1-888-270-9628.
Write:
Prescription Privacy Settlement

Rust Consulting, Inc.
P.O. Box 2438
Faribault, MN 55021-9138

Exhibit C

# EXHIBIT C

## AGREED STATEMENT
## IN RESPONSE TO MEDIA INQUIRIES

Pursuant to Paragraph 12.9 of the Stipulation, the Parties and their representatives agree that, if any representative of the media or the press should inquire as to the Litigation, the Settlement, the Settlement Agreement, or any related matter, the response by such Party or representative shall be confined to the following agreed-upon statement:

McKesson Version:

McKesson Corporation has reached a settlement in the case of Rodriguez v. NDCHealth Corporation, a McKesson company more commonly known as RelayHealth. As part of the settlement, both sides agreed that plaintiffs' claims that McKesson or NDCHealth violated the California Confidentiality of Medical Information Act (CMIA) will be dismissed with prejudice. In addition, McKesson and NDCHealth did not admit liability and did not agree with any of the claims alleged in the litigation. Specific terms of the Settlement can be found at the settlement web site: www.insert-name-here.org.

Plaintiffs' Version:

The plaintiffs, represented by the Marcarian Law Firm, have reached a settlement in the case of *Rodriguez v. NDCHealth Corporation,* a McKesson company more commonly known as RelayHealth. As part of the settlement, both sides agreed that claims that the California Confidentiality of Medical Information Act (CMIA) was violated will be dismissed with prejudice. In addition, McKesson and NDCHealth did not admit liability and did not agree with any of the claims alleged in the litigation. Specific terms of the Settlement can be found at the settlement web site: www.insert-name-here.org.

Exhibit D

1    ARMOND MARCARIAN, ESQ. (SB# 213883)
     Armond@MarcarianLaw.US
2    MARC L. MCCULLOCH, ESQ. (SB# 252526)
     Marc@MarcarianLaw.US
3    Marcarian Law Firm
     15260 Ventura Boulevard
4    Penthouse Suite 2250
     Sherman Oaks, CA  91403
5    Telephone:  (818) 995-8787
     Facsimile:   (818) 995-8817
6
7    Attorneys for Plaintiffs
     DEMETRIA RODRIGUEZ, *et al.*
8
     DAVID M. WALSH (SB# 120761)
9    davidwalsh@paulhastings.com
     PAUL, HASTINGS, JANOFSKY & WALKER LLP
10   515 South Flower Street, Twenty-Fifth Floor
     Los Angeles, CA  90071-2228
11   Telephone:  (213) 683-6000
     Facsimile:  (213) 627-0705
12   *(Additional counsel on signature page)*
13   Attorneys for Defendants
     NDCHEALTH CORPORATION and MCKESSON CORPORATION
14
15                   UNITED STATES DISTRICT COURT
16                  CENTRAL DISTRICT OF CALIFORNIA
17
     DEMETRIA RODRIGUEZ, NOVA            Case No.: CV 10-3522 VBF (FMOx)
18   JIMENEZ, HESHMATOLLAH
     NAYERI, VAHIDEH KARAMIAN,           **[PROPOSED]**
19   PARVIN MAJIDIAN, SAMANTHA           **ORDER GRANTING MOTION**
     TIKOTIN, individually and on behalf of   **FOR PRELIMINARY**
20   all others similarly situated,      **APPROVAL OF CLASS ACTION**
                                         **SETTLEMENT**
21              Plaintiffs,
22        vs.
23   NDCHEALTH CORPORATION, a            Date:   January 24, 2011
     Delaware corporation, and MCKESSON   Time:  1:30 p.m.
24   CORPORATION, a Delaware             Room: 9
     corporation,
25                                       Hon. Valerie Baker Fairbank
                Defendants.
26
27
28

1    Before the Court is the parties' Joint Motion for Preliminary Approval of

2    Class Action Settlement (the "Motion").  The Motion asks the Court to

3    preliminarily approve a proposed settlement of the above-entitled litigation,

4    *Rodriguez, et al. v. NDCHealth Corp., et al.*, Case No. CV 10-3522 VBF (the

5    "Litigation"), the terms of which are set forth in the Stipulation of Settlement

6    ("Stipulation") filed with the Motion.

7    Having reviewed the Motion, the memorandum of points and authorities and

8    other documents filed in support thereof, including the Stipulation, and good cause

9    appearing therefor, the Court hereby GRANTS the Motion, preliminarily approves

10   the proposed settlement set forth in the Stipulation, and makes the findings and

11   grants the relief set forth below.

12    NOW, THEREFORE, IT IS HEREBY ORDERED:

13    1.    Terms – The capitalized terms in this Order shall be deemed to have

14   the same meaning as defined in the Stipulation.

15    2.    Preliminary Certification of the Class – The Court preliminarily finds

16   that the Class proposed by the Parties is so numerous that joinder of all members is

17   impracticable, that there are questions of fact and law common to the Class and that

18   those question predominate over any questions affecting only individual members,

19   that the claims of the Class Representatives are typical of the claims of the Class,

20   that the Class Representatives will fairly and adequately protect the interests of the

21   Class, and that Defendants acted or refused to act on grounds that apply generally to

22   the class, so that injunctive relief is appropriate respecting the class as a whole.

23   Fed. R. Civ. P. 23(a), (b)(2).  The Court also preliminarily finds that monetary relief

24   does not predominate over the injunctive relief that will be provided under the

25   Settlement.  In light of these findings, preliminarily and for purposes of the

26   Settlement, the Court certifies this Litigation as a class action pursuant to Fed. R.

27   Civ. P. 23(a) and (b)(2).  The Class consists of:

28

1
2
3
4

> All persons residing in California who obtained prescription drugs and/or prescription drug-related services from pharmacies other than Target from February 1, 2008, through December 31, 2008, records of which were transferred to Target by NDCHealth in or about October and November 2009.

5

6

7

8

9

10

11

12

13

14

15

Excluded from the Class are (a) the officers, directors, and employees of any entity which is or has been a defendant in the Litigation including Etreby Computer Company, Cerner Healthcare Solutions, Inc., Cerner Corporation, McKesson Corporation, NDCHealth Corporation, and RelayHealth Corporation, together with those individuals' immediate family members; (b) the officers, directors, and employees of any parent, subsidiary or affiliate of one or more of the Defendants or of any business entity in which any of the Defendants owns a controlling interest, together with those individuals' immediate family members; and (c) Counsel for Defendants and their immediate family members.  Also excluded from the Class is any potential Class Member who requests exclusion from the Class in a timely and proper manner, as provided below.

16

17

18

19

20

21

22

     3.     <u>Appointment of Class Representatives</u> – The Court preliminarily finds that plaintiffs Demetria Rodriguez, Nova Jimenez, Heshmatollah Nayeri, Vahideh Karamian, Parvin Majidian, and Samantha Tikotin have claims typical of Class Members and that these individuals will fairly and adequately represent the interests of the Class.  Consequently, preliminarily and for purposes of this Settlement, the Court appoints Demetria Rodriguez, Nova Jimenez, Heshmatollah Nayeri, Vahideh Karamian, Parvin Majidian, and Samantha Tikotin as Class Representatives.

23

24

25

26

27

     4.     <u>Appointment of Class Counsel</u> – The Court preliminarily finds that the Marcarian Law Firm will fairly and adequately represent the interests of the Class. Consequently, preliminarily and for purposes of this Settlement, the Court appoints Armond Marcarian and Marc McCulloch of the Marcarian Law Firm as Class Counsel.

28

5.     <u>Fairness of the Settlement</u> – The Court finds that the proposed Settlement resulted from arm's-length negotiations and mediation between experienced counsel, that counsel for the Parties were well-informed by investigation and discovery about the merits of the claims and defenses in the Action, and that the Settlement is sufficiently fair, reasonable and adequate to the Class to warrant preliminary approval and the dissemination of notice to the Class regarding the proposed Settlement.

6.     <u>Approval of the Settlement Administrator</u> – The Court approves the appointment of Rust Consulting, Inc. as the Settlement Administrator.  The Settlement Administrator is ordered to perform the tasks specified in the Stipulation, including but not limited to Sections 7.2 (notice to the class and certification of class notice), 7.3.2 (invoicing of Administrative Expenses), and 7.4 (handling of Objections and Requests for Exclusion).

7.     <u>Notice to the Class</u> – The Court has been presented with a proposed form of Class Notice, attached hereto as Exhibit "A," to be published as described in the Stipulation and in the Notice Plan attached as Exhibit "E" thereto.  With respect to that notice:

a.     The Court finds that the publication of the Class Notice fairly and adequately (i) describes the terms and effect of the Stipulation and the Settlement, (ii) notifies the Class that Class Counsel will seek an award of attorneys' fees not to exceed 25% of the sum of the Settlement Fund and the maximum amount of Administrative Expenses payable by Defendants, such award to be payable from the Settlement Fund, (iii) gives notice to the Class of the time and place of the Fairness Hearing, and (iv) describes how Class Members may exclude themselves from the Class or object to the Settlement.

b.     The Court finds that the publication of the Class Notice meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and due

1    process, constitutes the best notice practicable under the circumstances, and

2    constitutes due and sufficient notice to all persons and entities entitled thereto.

3            c.       The Court orders that the Class Notice be disseminated as

4    described in the Stipulation within 120 days of entry of this Order.

5            d.       To allow members of the public to determine whether they are

6    members of the Class, the Defendants and the Settlement Administrator are hereby

7    authorized to disclose, as reasonably necessary for that purpose, information that

8    reflects the entity or entities that reimbursed the prescription claims submitted by

9    Class Members from February through December 2008.  Such information shall be

10   made available through the Settlement Website and Toll-Free Number established

11   by the Settlement Administrator pursuant to the Stipulation or as otherwise

12   necessary to permit members of the public to determine whether they are members

13   of the Class.

14       8.    Payment of Notice Expenses –Defendants shall pay the Administrative

15   Expenses associated with dissemination of the Class Notice subject to their right to

16   be reimbursed from the Settlement Fund for Administrative Expenses exceeding

17   one million dollars ($1,000,000) as described in the Stipulation.

18       9.    Fairness Hearing – A hearing is scheduled for June 13, 2011 at 1:30

19   p.m. (the "Fairness Hearing") to determine, among other things:

20           a.       Whether the Settlement is fair, reasonable and adequate and

21   should be finally approved;

22           b.       Whether the Final Approval Order should be entered, dismissing

23   the Litigation with prejudice and releasing the claims of the Class and Defendants

24   as set forth in the Stipulation;

25           c.       Whether the application for attorneys' fees, costs and expenses

26   filed by Class Counsel should be approved;

27           d.       Whether the request for incentive payments to the Class

28   Representatives should be approved; and

1          e.     Such other matters as may properly come before the Court.

2         10.   <u>Objections to the Settlement</u> – Any member of the Class who wishes

3    to object to the fairness, reasonableness or adequacy of the Settlement, to any term

4    of the Stipulation, to the proposed award of attorneys' fees and expenses to Class

5    Counsel, or the proposed award of incentive payments to the Class Representatives,

6    may file an objection.  To object, a Class Member must mail the Settlement

7    Administrator a written statement of objection no later than thirty (30) days after

8    the publication of the Class Notice.  The Settlement Administrator or the Parties

9    shall file such Objections with the Court in connection with the Parties' motion for

10   final approval of the Settlement.  The statement of objection must set forth the

11   specific reason(s) for the Class Member's objection, including any legal support the

12   Class Member wishes to bring to the Court's attention and any evidence the Class

13   Member wishes to introduce in support of the objection.  A Class Member may

14   object either on his or her own or through an attorney hired at the Class Member's

15   expense.  Any Class Member who objects, as described herein, may appear at the

16   Fairness Hearing, either in person or through personal counsel hired at the Class

17   Member's expense, to object to the fairness, reasonableness, or adequacy of the

18   Settlement as set forth in the Stipulation.  A Class Member or his or her attorney

19   intending to make an appearance at the Fairness Hearing must:  (a) file a notice of

20   appearance with the Court no later than twenty-one (21) days prior to the Fairness

21   Hearing; and (b) serve a copy of such notice of appearance on both Counsel for

22   Defendants and Class Counsel.  Any Class Member who fails to comply with the

23   provisions of this Section shall waive and forfeit any and all rights the Class

24   Member may have to appear separately and/or to object, and shall be bound by all

25   the terms of the Stipulation and by all proceedings, orders, and judgments in the

26   Litigation.

27        11.   <u>Requests for Exclusion from the Class</u> – Any member of the

28   preliminarily approved Class may request to be excluded from the Class.  To

1   request exclusion from the Class, a Class Member must mail a written Request for

2   Exclusion to the address of the Settlement Administrator (as provided in the Class

3   Notice), which must be personally signed by the Class Member, and postmarked no

4   later than thirty (30) days following the publication of the Class Notice.  Requests

5   for Exclusion containing a name and signature that do not match the name of the

6   Class Member on file with the Settlement Administrator are invalid and shall be

7   considered void.  Every Class Member who does not timely and properly submit a

8   Request for Exclusion from the Class shall be bound by all proceedings, orders, and

9   judgments in the Litigation, even if he or she has pending, or subsequently initiates,

10   litigation against Defendants or the Released Parties relating to the Released

11   Claims.  A Class Member who submits a valid Request for Exclusion will be

12   excluded entirely from the Class and, therefore, from participation in the

13   Settlement.  All Class Members agree that the satisfaction and release of all the

14   Released Claims against Defendants, as well as entry of the Final Approval Order,

15   shall be binding upon all Class Members.  The Settlement Administrator or the

16   Parties shall file with the Court in connection with the Parties' motion for final

17   approval of the Settlement all Requests for Exclusion that are received from Class

18   Members.

19        12.   Forwarding of Objections and Requests for Exclusion – Class Counsel

20   and Counsel for Defendants shall promptly furnish each other and the Settlement

21   Administrator with copies of any and all Objections or Requests for Exclusion that

22   come into their possession.

23        13.   Binding Effect on the Class – Upon entry of a Final Approval Order,

24   all Class Members who have not validly requested to be excluded from the Class in

25   accordance with the conditions set forth above shall be bound by all determinations

26   and judgments in the Litigation, whether favorable or unfavorable.

27        14.   Expenses of the Settlement – As provided in the Stipulation, the

28   Administrative Expenses associated with the Settlement, which include expenses

1   associated with giving notice to the Class, shall be paid by the Defendants, subject

2   to their right to reimbursement from the Settlement Fund for Administrative

3   Expenses exceeding $1,000,000.

4        15.   <u>The Settlement Fund</u> – If the Court enters a Final Approval Order, the

5   Settlement Fund of $4,000,000 will be funded and distributed after the Effective

6   Date in accordance with the terms of the Stipulation.  The contents of the

7   Settlement Fund shall be deemed and considered to be in *custodia legis* of the

8   Court, and shall remain subject to the jurisdiction of the Court, until such time as

9   the contents of those funds shall be distributed pursuant to the Settlement

10  Agreement and/or further order(s) of the Court.  There shall be no distribution of

11  the Settlement Fund until the Effective Date, as defined in the Stipulation.

12       16.   <u>Stay of this Litigation</u> – All discovery and pretrial proceedings in this

13  Litigation are stayed and suspended until further order of this Court.

14       17.   <u>Leave to File Second Amended Complaint</u> – Plaintiffs are granted

15  leave to file a Second Amended Complaint, substantially in the form attached

16  hereto as Exhibit B, that includes a request for the injunctive relief to which the

17  parties have agreed in the Stipulation.

18       18.   <u>Prohibition on Related Claims</u> – Pending the final determination of the

19  fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation,

20  neither Plaintiffs nor any Class Member, either directly, representatively, or in any

21  other capacity, shall institute, commence, or prosecute any of the Released Claims

22  in any action or proceeding in any court or tribunal against any of the Released

23  Parties.

24       19.   <u>Use of the Settlement and Stipulation</u> – Neither the Stipulation nor the

25  Settlement contained therein, nor any act performed or document executed pursuant

26  to or in furtherance of the Stipulation or the Settlement (i) is or may be deemed to

27  be, or may be used as an admission of, or evidence of, the validity or lack thereof of

28  any Released Claim, or of any wrongdoing or liability of any of the Released

1   Parties, or (ii) is or may be deemed to be, or may be used as an admission of, or

2   evidence of, any fault or omission of any of the Released Parties, in any civil,

3   criminal, or administrative proceeding in any court, administrative agency, or other

4   tribunal.

5       20.   <u>Termination of the Settlement</u> – If the Court does not grant final

6   approval of the Settlement or if the Settlement is terminated by the Parties in

7   accordance with the terms of the Stipulation, (i) the Parties shall be restored to the

8   positions they occupied prior to notifying the Court of this Settlement, (ii) the terms

9   and provisions of the Stipulation shall have no further force and effect with respect

10   to the Parties and shall not be used in the Litigation or in any other proceeding for

11   any purpose, and (iii) any judgment or order entered by the Court in accordance

12   with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

13       21.   <u>Continuance of Deadlines and Hearings</u> – The Court may, for good

14   cause, extend any deadlines set forth in this order without further notice to Class

15   Members.  The Court likewise may adjourn or continue the Fairness Hearing and

16   related matters, including the consideration of the application for attorneys' fees

17   and reimbursement of litigation expenses, without further notice to Class Members

18   other than the Class Representatives.

19       22.   <u>Jurisdiction</u> – The Court retains exclusive jurisdiction over the

20   Litigation to consider all further matters arising out of or connected with the

21   Settlement.

22

23       SO ORDERED.

24

25   Dated: _____

26                                        _____
                                          Honorable Valerie Baker Fairbank
                                          United States District Court Judge

27

28

# Exhibit E

# EXHIBIT E

# NOTICE PLAN

The Class Notice, translated as appropriate, will be published in the following, or similar, publications, as described in the Stipulation:

| Publication | Advertisement Size |
|---|---|
| Magazines | |
| 1. *Jet* (California edition) | full-page ad (4.625" x 6.875") |
| 2. *Parents* (California edition) | half-page ad (3.5" x 10") |
| 3. *People* (California edition) | full-page ad (7" x 10") |
| 4. *People en Español* (California edition) | full-page ad (7" x 10") |
| 5. *TV Guide Magazine* (California edition) | full-page ad (7.375" x 10") |
| Newspaper Supplements | |
| 6. *Parade* (California edition) | two-fifths-page ad (5.625" x 7.25") |
| 7. *USA Weekend* (California edition) | digest-page ad (5" x 6.625") |
| 8. *American Profile* (California edition) | three-quarter-page ad (6" x 9.75") |
| General Market Newspapers | |
| 9. *Bakersfield Californian* | one-sixth-page ad (5.25" x 7") |
| 10. *Chico Enterprise Record* | one-sixth-page ad (5.25" x 7") |
| 11. *Contra Costa Times* | one-sixth-page ad (5.25" x 7") |
| 12. *Eureka Times Standard* | one-sixth-page ad (5.25" x 7") |
| 13. *Fairfield Daily Republic* | one-sixth-page ad (5.25" x 7") |
| 14. *Fresno Bee* | one-sixth-page ad (5.25" x 7") |
| 15. *Imperial Valley Press* | one-sixth-page ad (5.25" x 7") |
| 16. *Los Angeles Times* | one-sixth-page ad (5.25" x 7") |
| 17. *Marin Independent Journal* | one-sixth-page ad (5.25" x 7") |

| 18. *Marysville Appeal Democrat* | one-sixth-page ad (5.25" x 7") |
|---|---|
| 19. *Modesto Bee* | one-sixth-page ad (5.25" x 7") |
| 20. *Monterey County Herald* | one-sixth-page ad (5.25" x 7") |
| 21. *Napa Valley Register* | one-sixth-page ad (5.25" x 7") |
| 22. *Oakland Tribune* | one-sixth-page ad (5.25" x 7") |
| 23. *Orange County Register* | one-sixth-page ad (5.25" x 7") |
| 24. *Redding Record Searchlight* | one-sixth-page ad (5.25" x 7") |
| 25. *Riverside Press Enterprise* | one-sixth-page ad (5.25" x 7") |
| 26. *Sacramento Bee* | one-sixth-page ad (5.25" x 7") |
| 27. *San Bernardino Sun* | one-sixth-page ad (5.25" x 7") |
| 28. *San Diego Union Tribune* | one-sixth-page ad (5.25" x 7") |
| 29. *San Francisco Chronicle* | one-sixth-page ad (5.25" x 7") |
| 30. *San Jose Mercury News* | one-sixth-page ad (5.25" x 7") |
| 31. *San Luis Obispo Tribune* | one-sixth-page ad (5.25" x 7") |
| 32. *Santa Barbara News Press* | one-sixth-page ad (5.25" x 7") |
| 33. *Santa Cruz Sentinel* | one-sixth-page ad (5.25" x 7") |
| 34. *Santa Rosa Press Democrat* | one-sixth-page ad (5.25" x 7") |
| 35. *Stockton Record* | one-sixth-page ad (5.25" x 7") |
| 36. *Ventura County Star* | one-sixth-page ad (5.25" x 7") |
| Hispanic Newspapers | |
| 37. *El Popular* | approximately 5" x 7" or similar |
| 38. *El Sol* | approximately 5" x 7" or similar |
| 39. *Vida en el Valle* | approximately 5" x 7" or similar |
| 40. *Excelsior* | approximately 5" x 7" or similar |
| 41. *La Opinion* | approximately 5" x 7" or similar |
| 42. *La Prensa Hispana* | approximately 5" x 7" or similar |
| 43. *Vida* | approximately 5" x 7" or similar |
| 44. *Orale Magazine* | approximately 5" x 7" or similar |

| 45. *Hoy Los Angeles* | approximately 5" x 7" or similar |
|---|---|
| 46. *El Informador Del Valle* | approximately 5" x 7" or similar |
| 47. *La Prensa Hispana* | approximately 5" x 7" or similar |
| 48. *El Hispano* | approximately 5" x 7" or similar |
| 49. *El Mexicano* | approximately 5" x 7" or similar |
| 50. *Enlace* | approximately 5" x 7" or similar |
| 51. *Diario San Diego* | approximately 5" x 7" or similar |
| 52. *El Latino* | approximately 5" x 7" or similar |
| 53. *El Mensajero* | approximately 5" x 7" or similar |
| 54. *El Reportero* | approximately 5" x 7" or similar |
| 55. *Fronteras de la Noticia* | approximately 5" x 7" or similar |
| 56. *El Mexicano* | approximately 5" x 7" or similar |
| 57. *Adelante Valle* | approximately 5" x 7" or similar |
| 58. *Bajo El Sol* | approximately 5" x 7" or similar |
| 59. *La Cronica* | approximately 5" x 7" or similar |
| African-American Newspapers | |
| 60. *Sun Reporter* | approximately 5" x 7" or similar |
| 61. *West Wave* | approximately 5" x 7" or similar |
| 62. *Hollywood Independent* | approximately 5" x 7" or similar |
| 63. *West Hollywood Independent* | approximately 5" x 7" or similar |
| 64. *East Wave* | approximately 5" x 7" or similar |
| 65. *Northeast Wave* | approximately 5" x 7" or similar |
| 66. *Herald American* | approximately 5" x 7" or similar |
| 67. *The Press* | approximately 5" x 7" or similar |
| 68. *Lyn Press* | approximately 5" x 7" or similar |
| 69. *Rolling Out Los Angeles* | approximately 5" x 7" or similar |
| 70. *Precinct Reporter* | approximately 5" x 7" or similar |
| 71. *Los Angeles Bay Observer* | approximately 5" x 7" or similar |

| 72. *Rolling Out San Francisco* | approximately 5" x 7" or similar |
|---|---|
| 73. *L.A. Scoop* | approximately 5" x 7" or similar |
| 74. *L.A. Watts Times Weekender* | approximately 5" x 7" or similar |
| 75. *Our Weekly* | approximately 5" x 7" or similar |
| 76. *Sacramento Observer* | approximately 5" x 7" or similar |
| 77. *Berkeley Post* | approximately 5" x 7" or similar |
| 78. *Black Business News* | approximately 5" x 7" or similar |
| 79. *Metropolis* | approximately 5" x 7" or similar |
| 80. *Compton Bulletin* | approximately 5" x 7" or similar |
| 81. *Inglewood Today* | approximately 5" x 7" or similar |
| 82. *Los Angeles Sentinel* | approximately 5" x 7" or similar |
| 83. *San Diego Voice & Viewpoint* | approximately 5" x 7" or similar |
| 84. *Bakersfield News Observer* | approximately 5" x 7" or similar |
| 85. *Tri-County Sentry Advocate* | approximately 5" x 7" or similar |
| 86. *Advocate* | approximately 5" x 7" or similar |
| Asian American Newspapers | |
| 87. *Taiwan Daily* | approximately 5" x 7" or similar |
| 88. *China Press* | approximately 5" x 7" or similar |
| 89. *Chinese Daily News* | approximately 5" x 7" or similar |
| 90. *Chinese L.A. Daily News* | approximately 5" x 7" or similar |
| 91. *Sing Tao Daily* | approximately 5" x 7" or similar |
| 92. *Zhong Guo Daily News* | approximately 5" x 7" or similar |
| 93. *Chinese News* | approximately 5" x 7" or similar |
| 94. *China Press* | approximately 5" x 7" or similar |
| 95. *Sing Tao Daily* | approximately 5" x 7" or similar |
| 96. *EDI City Magazine* | approximately 5" x 7" or similar |
| 97. *Phillipine News (Los Angeles)* | approximately 5" x 7" or similar |
| 98. *Tribune USA* | approximately 5" x 7" or similar |

| | |
|---|---|
| 99. *California Examiner* | approximately 5" x 7" or similar |
| 100. *Filipino Press* | approximately 5" x 7" or similar |
| 101. *Manila Mail* | approximately 5" x 7" or similar |
| 102. *Phillipine News (San Francisco, Oakland, San Jose)* | approximately 5" x 7" or similar |
| 103. *Rafu Shimpo* | approximately 5" x 7" or similar |
| 104. *Japanese Daily Sun* | approximately 5" x 7" or similar |
| 105. *San Diego Yu Yu* | approximately 5" x 7" or similar |
| 106. *Korea Daily* | approximately 5" x 7" or similar |
| 107. *Korea Times (Los Angeles)* | approximately 5" x 7" or similar |
| 108. *Korea Times (San Francisco, Oakland, San Jose)* | approximately 5" x 7" or similar |
| 109. *Korean Newsweek* | approximately 5" x 7" or similar |
| 110. *Sererchai Newspaper* | approximately 5" x 7" or similar |
| 111. *Siam Media Newspaper* | approximately 5" x 7" or similar |
| 112. *Nguoi Viet Daily News* | approximately 5" x 7" or similar |
| 113. *Saigon Times* | approximately 5" x 7" or similar |
| 114. *Hai Van News* | approximately 5" x 7" or similar |
| 115. *Viet Bao Daily News* | approximately 5" x 7" or similar |
| 116. *Vietnam Thoi Ba'o* | approximately 5" x 7" or similar |
| 117. *Viet Tribune* | approximately 5" x 7" or similar |

LEGAL_US_W # 66574095.1

Exhibit F

ARMOND MARCARIAN, ESQ. (SBN 213883)
Armond@MarcarianLaw.US
MARC L. McCULLOCH, ESQ. (SBN 252526)
Marc@MarcarianLaw.Us
MARCARIAN LAW FIRM
15260 VENTURA BOULEVARD
PENTHOUSE SUITE 2250
SHERMAN OAKS, CALIFORNIA 91403
TELEPHONE: (818) 995-8787
FACSIMILE: (818) 995-8817

Attorneys for Plaintiffs Demetria Rodriguez, Nova Jimenez, Heshmatollah Nayeri, Vahideh Karamian, Parvin Majidian, and Samantha Tikotin and all individuals similarly situated.

Exhibit F

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIA RODRIGUEZ, NOVA JIMENEZ, HESHMATOLLAH NAYERI, VAHIDEH KARAMIAN, PARVIN MAJIDIAN and SAMANTHA TIKOTIN, individually and on behalf of all others similarly situated<br><br>          Plaintiffs,<br><br>     vs.<br><br>NDCHEALTH CORPORATION, a Delaware corporation; and MCKESSON CORPORATION, a Delaware corporation,<br><br>          Defendants.<br>_____ | Case No.: CV 10-3522-VBF (FMOx)<br><br>[Assigned for all purposes to Honorable Valerie Baker Fairbank]<br><br>**SECOND AMENDED COMPLAINT**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**VIOLATIONS OF THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT** [CALIFORNIA CIVIL CODE SECTION 56 ET SEQ.]<br><br>**DEMAND FOR JURY TRIAL** |

DEMETRIA RODRIGUEZ, NOVA JIMENEZ, HESHMATOLLAH NAYERI, VAHIDEH KARAMIAN, PARVIN MAJIDIAN and SAMANTHA TIKOTIN ("Plaintiffs"), individually and on behalf of all other similarly situated individuals, hereby demand a jury trial and allege as follows against the above-named defendants:

## JURISDICTION AND VENUE

1.      On or about May 11, 2010, Defendants removed this action from California Superior Court for the County of Los Angeles to the jurisdiction of this Court, pursuant to the Class Action Fairness Act of 2005 ("CAFA") as codified by 28 U.S.C. §§ 1332(d)(2) and 1453(b).

2.      Venue is proper in the Central District of California ("District") pursuant to 28 U.S.C §§ 1391(b)-(c) and 1441(a).

3.      Venue is proper in this District because all of the Plaintiffs and numerous class members reside in this District and a substantial part of the events or occurrences upon which this action is based, and which give rise to the claims asserted herein, occurred in this District.  Plaintiffs and numerous class members obtained prescriptions and, or, prescription drug related services from pharmacies in this District and, in so doing, their confidential medical information was collected in this District.  Defendants are subject to personal jurisdiction in this District because they received substantial compensation and profits from the sale of their respective products and services in this District.

4.      Venue in this Court is proper because the Central District of California is the District Court of the United States for the district and the division embracing the California Superior Court for the County of Los Angeles where this action was originally filed, and where this case was pending, and from which defendants removed this action.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**PARTIES**

5.    **Plaintiffs**

a.    DEMETRIA RODRIGUEZ is, and at all times mentioned in this complaint was, a resident of County of Los Angeles, State of California, and is an individual over the age of 18 years.

b.    NOVA JIMENEZ is, and at all times mentioned in this complaint was, a resident of County of Ventura, State of California, and is an individual over the age of 18 years.

c.    HESHMATOLLAH NAYERI is, and at all times mentioned in this complaint was, a resident of County of Los Angeles, State of California, and is an individual over the age of 18 years.

d.    VAHIDEH KARAMIAN is, and at all times mentioned in this complaint was, a resident of County of Los Angeles, State of California, and is an individual over the age of 18 years.

e.    PARVIN MAJIDIAN is, and at all times mentioned in this complaint was, a resident of County of Los Angeles, State of California, and is an individual over the age of 18 years.

f.    SAMANTHA TIKOTIN is, and at all times mentioned in this complaint was, a resident of County of Los Angeles, State of California, and is an individual over the age of 18 years

6.    **Defendants.**

a.    Plaintiffs are informed and believe and thereon allege that defendant MCKESSON CORPORATION is, and at all times relevant to this complaint was, a corporation organized under the laws of the State of Delaware, having its principal place of business located at 1 Post Street, San Francisco, California.

b.    Plaintiffs are informed and believe and thereon allege that defendant NDCHEALTH CORPORATION does business as

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

RELAYHEALTH ("RelayHealth") and is, and at all times relevant to this complaint was, a corporation organized under the laws of the State of Delaware and operates within defendant MCKESSON CORPORATION's Technology Solutions business segment, purportedly  as a wholly-owned subsidiary.

c.    Unless otherwise designated hereinafter, all references to Defendants shall mean MCKESSON CORPORATION and NDCHEALTH CORPORATION.

d.    All references made in this complaint to any of the Defendants shall include all of Defendants' predecessors, successors, or representatives, while actively engaged in the management of each of the Defendants' affairs.

e.    Plaintiffs are informed and believe and thereon allege that each of the Defendants named herein acted as the employee, agent, partner, alter-ego and/or joint venturer of each of the other Defendants named herein, and, in doing the acts and in carrying out the wrongful conduct alleged herein, each of said Defendants acted within the scope of said relationship and with the permission, consent and ratification of each of the other Defendants named herein.

## <u>SUMMARY OF ACTION</u>

7.    This is a class and private Attorney General action brought on behalf of all patients who obtained  prescription drugs and/or prescription drug related services from California licensed pharmacies and whose confidential medical information including, but not limited to, each patient's full name, date of birth, social security number, prescription number, drug name and insurance cardholder ID,  was unlawfully used and/or disclosed to Target Pharmacy for a financial gain and without authorization, in violation of California's <u>Confidentiality of Medical</u>

Information Act, California Civil Code section 56 *et seq.,* through the acts and omissions of RelayHealth in or about October 2009 and/or November 2009.

8.  The amounts in dispute, in the aggregate, are significant based upon the statutory violations alleged herein.

## CLASS ACTION ALLEGATIONS

9.  Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rules 23(a), 23(b)(1), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure ("FRCP").  The class which Plaintiffs seek to represent is defined as:

(a) All persons who obtained  prescription drugs and/or prescription drug related services from California licensed pharmacies and whose confidential medical information was unlawfully used and/or disclosed to Target Pharmacy, without authorization, in violation of California's Confidentiality of Medical Information Act, through the acts and omissions of RelayHealth in or about October 2009 and/or November 2009 ("PLAINTIFF CLASS").

(b) Specifically excluded from the PLAINTIFF CLASS are the court and its staff, Defendants, any entity in which any of the Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity.

10.  **Numerosity (FRCP 23(a)(1))**. The proposed PLAINTIFF CLASS is so numerous that joinder of all individual members in one action would be impracticable and the disposition of their claims through this class action will benefit both the parties and the Court.

11.     Plaintiffs are informed and believe and thereon allege that there are, at a minimum, five thousand (5,000) or more members that comprise the PLAINTIFF CLASS.

12.     The exact size of the PLAINTIFF CLASS and identities of individual members thereof are ascertainable through RelayHealth's records including, but not limited to, the electronic files or files that were transmitted to Target Pharmacy in or about October 2009 and/or, November 2009.

13.     Members of the PLAINTIFF CLASS may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as published notice, email notice, website notice, first-class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and, or, appropriate by the Court.

14.     **Typicality (FRCP 23(a)(3))**.  Plaintiffs' claims are typical of the claims of the entire PLAINTIFF CLASS.  The claims of the Plaintiffs and members of the PLAINTIFF CLASS are based on the same legal theories and arise from the same unlawful conduct.

15.     Plaintiffs and members of the PLAINTIFF CLASS obtained prescription drugs and, or, prescription drug related services from California licensed pharmacies and their confidential medical information was then unlawfully used or disclosed to Target Pharmacy, without authorization, in violation of California's Confidentiality of Medical Information Act, through the acts and omissions of RelayHealth in or about October 2009 and/or November 2009.

16.     **Common Questions of Fact and Law (FRCP 23(a)(2) and 23(b)(3))**.  There are a well-defined community of interest and common questions of law and fact affecting the members of the PLAINTIFF CLASS.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

17.     The questions of law and fact common to the PLAINTIFF CLASS predominate over questions which may affect individual members and include the following:

(a)     Whether RelayHealth unlawfully used or disclosed Plaintiffs' and the PLAINTIFF CLASS' confidential medical information to Target Pharmacy, without authorization, in violation of California's Confidentiality of Medical Information Act, on or about October 2009 and/or November 2009.

(b)     Whether RelayHealth's conduct was negligent.

(c)     Whether Plaintiffs and the PLAINTIFF CLASS are entitled to statutory damages, costs and/or attorney's fees for RelayHealth's acts or omissions.

18.     **Adequacy of Representation (FRCP 23(a)(4)).**  Plaintiffs are adequate representatives of the PLAINTIFF CLASS because their interests do not conflict with those of the PLAINTIFF CLASS which Plaintiffs seek to represent.  Plaintiffs will fairly, adequately and vigorously represent and protect the interests of the PLAINTIFF CLASS and Plaintiffs have no interests antagonistic to the PLAINTIFF CLASS.  Plaintiffs have retained counsel who is competent and experienced in the prosecution of class action litigation.

19.     **Superiority (FRCP 23(b)(1) and 23(b)(3)).**  A class action is superior to other available means for the fair and efficient adjudication of the claims of the PLAINTIFF CLASS.  While the aggregate damages which may be awarded to the PLAINTIFF CLASS are likely to be substantial, the nominal damages recovered by individual members of the PLAINTIFF CLASS are relatively small.  As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the PLAINTIFF CLASS to seek individual

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

redress for the wrongs done to them.  Plaintiffs are unaware of any other litigation concerning this controversy already commenced by or against any member of the PLAINTIFF CLASS.  While the likelihood of PLAINTIFF CLASS members prosecuting individualized claims is remote, individualized litigation would present the potential for varying, inconsistent or contradictory judgments and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues.  In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system and would protect the rights of each member of the PLAINTIFF CLASS.  Finally, equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of litigation among the class members in relationship to the benefits received.

20.  **Injunctive Relief (FRCP 23(b)(2)).**   Injunctive relief is appropriate because RelayHealth's actions, namely the unlawful use or disclosure of confidential medical information in violation of California's Confidentiality of Medical Information Act, apply to the PLAINTIFF CLASS as a whole.

## FIRST CAUSE OF ACTION
### For Violation of California Civil Code §§ 56 *et seq.*
### (Against NDCHEALTH CORPORATION Doing Business As RelayHealth)

21.  Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 4 and paragraphs 6 through 20 as if set forth in full herein.

22.  California Civil Code sections 56 through 56.37 inclusive, known as  the Confidentiality of Medical Information Act ("CMIA"), makes

the unauthorized use and, or, disclosure of medical information unlawful, except as permitted or required by law.

23. **California Civil Code section 56.o5 in part provides:**

(g) "Medical information" means any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment. "Individually identifiable" means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity.

(h) "Patient" means any natural person, whether or not still living, who received health care services from a provider of health care and to whom medical information pertains.

(j) "Provider of health care" means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code; any person licensed pursuant to the Osteopathic Initiative Act or the Chiropractic Initiative Act; any person certified pursuant to Division 2.5 (commencing with Section 1797) of the Health and Safety Code; any clinic, health dispensary, or health facility licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. "Provider of health care" does not include insurance institutions as defined in subdivision (k) of Section 791.02 of the Insurance Code.

Stip. of Settlement - Exh. F
p. 33

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

24.    Pursuant to <u>California Civil Code</u> section 56.05(j), California pharmacies and California pharmacists are and, at all times relevant herein, were "providers of health care."

25.    Pursuant to <u>California Civil Code</u> section 56.05(h), Plaintiffs and the PLAINTIFF CLASS are and, at all times relevant herein, were "patients" who received health care services from California pharmacies and/or California pharmacists in the form of prescription drugs and, or, prescription drug-related services.

26.    Pursuant to <u>California Civil Code</u> section 56.05(g), "Medical Information," as used herein, means "individually identifiable information, in electronic or physical form ... sufficient to allow identification of the individual," including, but not limited to, "the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity."

<b><u>By its acts, RelayHealth is deemed to be a<br>"provider of health care" for purposes of the CMIA.</u></b>

27.    **California Civil Code section 56.06 provides:**

(a)    Any business organized for the purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis and treatment of the individual, **shall be deemed to be a provider of health care subject to the requirements of this part**. However, nothing in this section shall be construed to make a business specified in this subdivision a provider of health care for purposes of any law other than this part, including laws that specifically incorporate by reference the definitions of this part. (emphasis added.)

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1

2           (b) Any business described in subdivision (a) shall

3      maintain the same standards of confidentiality required

4      of a provider of health care with respect to medical
       information disclosed to the business.

5

6           (c) Any business described in subdivision (a) shall be

7      subject to the penalties for improper use and disclosure
       of medical information prescribed in this part.

8          28.   Plaintiffs are informed and believe and thereon allege that

9      RelayHealth is "deemed to be a provider of health care subject to the

10     requirements of" the CMIA, pursuant to California Civil Code section

11     56.06(a).

12         29.   Among other things, RelayHealth provides to pharmacies an

13     intelligent network which is a real-time electronic pharmacy claims

14     transaction  switching service that captures patients' Medical Information

15     as it flows through the RelayHealth network.

16         30.   RelayHealth processes more than 12.6 billion financial and

17     clinical transactions annually.

18         31.   Plaintiffs are informed and believe and thereon allege that

19     RelayHealth's intelligent network switching service contract requires that

20     RelayHealth be the exclusive provider of network switching and related

21     services to the contracting pharmacy or its agent.

22         32.   Plaintiffs are informed and believe and thereon allege that

23     RelayHealth not only captures but also maintains patients' Medical

24     Information for the purpose of diagnosis and treatment because

25     RelayHealth transmits said Medical Information from the pharmacy to a

26     pharmaceutical benefits manager ("PBM") or third party payer at the

27     request of the patient and, or, pharmacy in order to obtain authorization of

28     and payment for the patient's prescription drug or related service.  In turn,

RelayHealth then transmits the PBM's or third party payer's determination to the pharmacy, which either (1) enables the pharmacy to treat the patient by dispensing the prescribed drug or related service, or (2) instructs the pharmacy to take alternative action such as contacting the prescriber to verify the diagnosis for the patient based on Medical Information made available to the pharmacy by RelayHealth.

33.    Plaintiffs are informed and believe and thereon allege that, once captured, RelayHealth maintains each patient's Medical Information in its database during the term of its contract with the pharmacy and for a minimum of six (6) years thereafter.

34.    In addition, Plaintiffs are informed and believe and thereon allege that RelayHealth maintains each patient's Medical Information including, but not limited to, each patient's date of birth in order to alert the pharmacy that a potential error has occurred in the patient's diagnosis or treatment.

35.    In addition, Plaintiffs are informed and believe and thereon allege that RelayHealth maintains each patient's Medical Information in order to convey individualized messages to the patient concerning drug discounts available or the availability of alternative, generic drugs for the patient's treatment.

36.    In addition, Plaintiffs are informed and believe and thereon allege that RelayHealth maintains each patient's Medical Information in its database, for a minimum of six years, in order to allow each patient the opportunity to manage his or her Medical Information by requesting an amendment thereto or by requesting an accounting of all disclosures of that patient's Medical Information, pursuant to state and federal laws.

37.    During all times relevant herein, Plaintiffs and members of the PLAINTIFF CLASS were patients of California pharmacies who used

RelayHealth's intelligent network to process electronic pharmacy claims transactions and Plaintiffs' and other putative class members' Medical Information was captured and maintained by RelayHealth as described above.

38.   **California Civil Code section 56.10 in part provides:**

> (a) No provider of health care, health care service plan, or contractor shall disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization, except as provided in subdivision (b) or (c).

> (d) Except to the extent expressly authorized by a patient or enrollee or subscriber or as provided by subdivisions (b) and (c), a provider of health care, health care service plan, contractor, or corporation and its subsidiaries and affiliates shall not intentionally share, sell, use for marketing, or otherwise use medical information for a purpose not necessary to provide health care services to the patient.

39.   **California Civil Code section 56.13 provides:**

> A recipient of medical information pursuant to an authorization as provided by this chapter or pursuant to the provisions of subdivision (c) of Section 56.10 may not further disclose that medical information except in accordance with a new authorization that meets the requirements of Section 56.11, or as specifically required or permitted by other provisions of this chapter or by law.

40.   Plaintiffs are informed and believe and thereon allege that, sometime in 2009, RelayHealth agreed, for financial gain, to provide Target Pharmacy with historical pharmacy claims data, including the historical pharmacy claims data belonging to pharmacies other than Target

Pharmacy, for the period commencing in or about February 2008 through in or about December 2008.

41.    Plaintiffs are informed and believe and thereon allege that, as a result of its aforementioned agreement with Target Pharmacy, RelayHealth and/or its employees or agents intentionally used Plaintiffs' and other putative class members' Medical Information, without authorization and for a purpose not necessary to provide health care services to the Plaintiffs and other putative class members.  In particular, RelayHealth intentionally used said Medical Information when it attempted to extract historical pharmacy claims data for delivery to Target Pharmacy.

42.    Plaintiffs are informed and believe and thereon allege that in or about November 2009, RelayHealth delivered the aforementioned historical pharmacy claims data to Target Pharmacy and, in so doing, negligently released and disclosed Plaintiffs' and other putative class members' individually identifiable Medical Information including, but not limited to, full name, date of birth, social security number, prescription number, drug name and insurance cardholder ID, without authorization, in violation of <u>California Civil Code</u> sections 56.10(a), 56.10(d) and 56.13.

**<u>RelayHealth is also subject to the provisions of<br>California Civil Code section 56.26</u>**

43.    **California Civil Code section 56.26 in part provides:**

(a) No person or entity engaged in the business of furnishing administrative services to programs that provide payment for health care services shall knowingly use, disclose, or permit its employees or agents to use or disclose medical information possessed in connection with performing administrative functions for a program, except as reasonably necessary in connection with the administration or maintenance of the program, or as required by law, or with an authorization.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

44.   Plaintiffs are informed and believe and thereon allege that, in addition to being deemed a "provider of health care" for the purposes of the CMIA, RelayHealth furnishes administrative services to PBMs and other third party payers because it transmits patients' Medical Information to those adjudication and payment programs over its intelligent network which is a real-time electronic pharmacy claims transaction switching service.

45.   Plaintiffs are informed and believe and thereon allege that, sometime in 2009, RelayHealth agreed, for financial gain, to provide Target Pharmacy with historical pharmacy claims data, including the historical pharmacy claims data belonging to pharmacies other than Target Pharmacy, for the period commencing in or about February 2008 through in or about December 2008.

46.   Plaintiffs are informed and believe and thereon allege that, as a result of its aforementioned agreement with Target Pharmacy, RelayHealth and/or its employees or agents knowingly used Plaintiffs' and other putative class members' Medical Information, without authorization and for a purpose not reasonably necessary to the administration or maintenance of the payment program.   In particular, RelayHealth knowingly used said Medical Information when it attempted to extract historical pharmacy claims data for delivery to Target Pharmacy.

47.   Plaintiffs are informed and believe and thereon allege that, RelayHealth's aforementioned unlawful use of Medical Information for the purposes of manipulation and extraction of historical pharmacy claims data for financial gain was a violation of California Civil Code section 56.26, which directly resulted in the negligent release of Plaintiffs' and other putative class members' protected Medical Information including, but not

1   limited to, full name, date of birth, social security number, prescription
2   number, drug name and insurance cardholder ID.

3       48.    As a direct result of RelayHealth's unlawful acts and, or,
4   omissions as alleged herein,  Plaintiffs, and members of the PLAINTIFF
5   CLASS, are each entitled to nominal damages of $1,000 pursuant to
6   California Civil Code section 56.36(b)(1).

## SECOND CAUSE OF ACTION
### For Violation of California Civil Code §§ 56 *et seq.*
### (Against MCKESSON CORPORATION)

9       49.    Plaintiffs incorporate by reference each and every allegation set
10  forth in paragraphs 1 through 4 and paragraphs 6 through 20 as if set forth
11  in full herein.

12      50.    MCKESSON CORPORATION is a Fortune 14 corporation that
13  delivers   medicines,   pharmaceutical   supplies,   information   and   care
14  management products and services designed to reduce costs and improve
15  quality across the healthcare industry.

16      51.    MCKESSON   CORPORATION   operates   its   business   in   two
17  segments, Distribution Solutions and Technology Solutions.

18      52.    Plaintiffs are informed and believe and thereon allege that, at
19  all times relevant herein, RelayHealth® was a registered trademark of the
20  MCKESSON CORPORATION.

21      53.    The network connectivity of RelayHealth® and its intelligent
22  network is deemed by MCKESSON CORPORATION to be one of the "key
23  solution   areas"   of   the   Technology   Solutions   segment   of   its   business,
24  processing   more   than   12.6 billion   financial   and   clinical   transactions
25  annually.

54.   MCKESSON CORPORATION's Executive Vice President, Patrick J. Blake, "has overall responsibility" for the "RelayHealth" business, among others.

55.   Plaintiffs are informed and believe and thereon allege that defendant NDCHEALTH CORPORATION operates within defendant MCKESSON CORPORATION's Technology Solutions segment under the name "RelayHealth," purportedly as a wholly-owned subsidiary.

56.   NDCHEALTH CORPORATION does business as "RelayHealth" and is commonly known to the public as "RelayHealth."

57.   Plaintiffs are informed and believe and thereon allege that MCKESSON CORPORATION operates several different businesses including, but not limited to, NDCHEALTH CORPORATION, all under the name "RelayHealth."

58.   Plaintiffs are informed and believe and thereon allege that MCKESSON CORPORATION is the alter ego of NCDHEALTH CORPORATION because it operates and controls NDCHEALTH CORPORATION as a fungible business unit under the name "RelayHealth" in order to further its own corporate goal of building brand awareness and loyalty to its registered trademark, RelayHealth®, without regard for NDCHEALTH CORPORATION's corporate identity.

59.   Plaintiffs are informed and believe and thereon allege that, at all times relevant herein, MCKESSON CORPORATION, as an alter ego, intended to benefit from NDCHEALTH CORPORATION's activities in the marketplace, doing business as "RelayHealth," while it simultaneously attempted to mislead the public and shield itself from any liability for the tortious acts of NDCHEALTH CORPORATION.

60.   Plaintiffs are informed and believe and thereon allege that because MCKESSON CORPORATION is the alter ego of NDCHEALTH

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

CORPORATION, doing business as "RelayHealth," MCKESSON CORPORATION is liable for the acts of NDCHEALTH CORPORATION, as fully set forth above in paragraphs 22 through 48.

61.   Moreover, Plaintiffs are informed and believe and thereon allege that MCKESSON CORPORATION has, at all time relevant herein, manifested its intent to treat NDCHEALTH CORPORATION as its agent because it requires NDCHEALTH CORPORATION to operate under the name "RelayHealth."

62.   Furthermore, Plaintiffs are informed and believe and thereon allege that NDCHEALTH CORPORATION has manifested its consent to be MCKESSON CORPORATION's agent by doing business as "RelayHealth" and MCKESSON CORPORATION controls the activities of NDCHEALTH CORPORATION -- doing business as "RelayHealth" -- through its Executive Vice President Patrick J. Blake.

63.   Plaintiffs are informed and believe and thereon allege that NDCHEALTH CORPORATION, doing business as "RelayHealth," acted within the scope of its agency when it delivered historical claims data to Target Pharmacy, although it negligently included the Medical Information of Plaintiffs and other putative class members.

64.   Plaintiffs are informed and believe and thereon allege that because NDCHEALTH CORPORATION, doing business as "RelayHealth," is the agent of MCKESSON CORPORATION and acted within the scope of its agency, MCKESSON CORPORATION is liable for the acts of NDCHEALTH CORPORATION, as fully set forth above in paragraphs 22 through 48.

65.   Moreover, Plaintiffs are informed and believe and thereon allege that, because MCKESSON CORPORATION is a pharmaceutical company as defined by California Civil Code section 56.o5(i), it further

Stip. of Settlement - Exh. F
p. 42

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

violated  <u>California Civil Code</u> section 56.102 when its agent and, or alter ego NDCHEALTH CORPORATION, doing business as "RelayHealth," negligently disclosed Plaintiffs' and other putative class members' Medical Information to Target, in or about November 2009, as fully set forth above in paragraphs 22 through 48.

66.     Therefore,     as     a     direct     result     of     NDCHEALTH CORPORATION's, (doing business as "RelayHealth") unlawful acts and, or, omissions as alleged herein,  MCKESSON CORPORATION is jointly and severally liable, and Plaintiffs, and members of the PLAINTIFF CLASS, are each entitled to nominal damages of $1,000 pursuant to <u>California Civil Code</u> section 56.36(b)(1).

## THIRD CAUSE OF ACTION
**For an Order Enjoining NDCHEALTH CORPORATION, Doing Business as "RelayHealth," from Further Use or Disclosure of Confidential Medical Information in Violation of California Civil Code §§ 56 *et seq.***

67.     Plaintiffs are informed and believe and thereon allege that NDCHEALTH CORPORATION will continue to use or disclose Plaintiffs' and other putative class members' Medical Information in violation of California Civil Code §§ 56 *et seq.* unless enjoined by an order of the Court ("Injunction").

68.     Plaintiffs and other putative class members will suffer irreparable harm if such Injunction does not issue.

69.     Accordingly, Plaintiffs, on behalf of themselves and the PLAINTIFF CLASS, request that the Court issue an Injunction:

  a. Requiring that NDCHEALTH CORPORATION comply with California Civil Code §§ 56 *et seq.*

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

b. Requiring that, within 30 days after entry of the Injunction, NDCHEALTH CORPORATION implement procedural safeguards, including but not limited to, multiple levels of review and verification by senior staff, designed to prevent any use or disclosure of confidential Medical Information in violation of California Civil Code §§ 56 *et seq.*

c. Requiring that, within 45 days after entry of the Injunction, NDCHEALTH CORPORATION verify that the procedural safeguards so ordered have been implemented.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themselves and the PLAINTIFF CLASS, pray for judgment against Defendants, and each of them as follows:

(1) An order certifying the PLAINTIFF CLASS and appointing Plaintiffs and their counsel to represent the class;

(2) For nominal, statutory damages pursuant to California Civil Code section 56.36(b)(1);

(3) For injunctive relief as described in paragraph 69, or as this Court may otherwise see fit;

(4) For pre- and post-judgment interest;

(5) For attorneys' fees and for costs of suit incurred herein pursuant to, *inter alia*, the common fund and Private Attorney General doctrines, as may be appropriate;

(6) For such other and further relief as this Court may deem just and proper.

///

///

///

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

DATED:  December _____, 2010                    MARCARIAN LAW FIRM


By:_____
ARMOND MARCARIAN
Attorney for Plaintiffs

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL