DAVID M. WALSH (SB# 120761)
davidwalsh@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

GRACE A. CARTER (SB# 101610)
gracecarter@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street, 24th Floor
San Francisco, CA 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

Attorneys for Defendants
NDCHEALTH CORPORATION and MCKESSON CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIA RODRIGUEZ, NOVA JIMENEZ, HESHMATOLLAH NAYERI, VAHIDEH KARAMIAN, PARVIN MAJIDIAN, SAMANTHA TIKOTIN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>NDCHEALTH CORPORATION, a Delaware corporation, and MCKESSON CORPORATION, a Delaware corporation,<br><br>                    Defendants. | Case No.: CV 10-3522 VBF (FMOx)<br><br>**DECLARATION OF GRACE A. CARTER IN SUPPORT OF STIPULATION PROPOSING SETTLEMENT FUND (CY PRES) RECIPIENTS**<br><br>Date:   June 27, 2011<br>Time:   1:30 p.m.<br>Place:  Courtroom: 9<br><br>Hon. Valerie Baker Fairbank |

1               I, Grace A. Carter, declare and state as follows:

2

3              1.     I am an attorney at law duly licensed to practice before the

4  courts of the State of California and admitted to practice before this Court. I am a

5  partner in the law firm of Paul, Hastings, Janofsky & Walker LLP ("Paul

6  Hastings"), counsel of record for defendants NDCHealth Corp. and McKesson

7  Corp. (collectively, "Defendants"). I make this Declaration in support of the

8  Parties' Stipulation Proposing Settlement Fund (Cy Pres) Recipients. Unless

9  otherwise stated, I have personal knowledge of the matters set forth herein and if

10  called upon to testify could and would testify to these facts.

11

12             2.     I make this Declaration in support of the Stipulation

13  Proposing Settlement Fund (Cy Pres) Recipients (the "Stipulation"). I have

14  reviewed all documents filed in this matter, and am thoroughly familiar with the

15  entire case file. I have been one of the primary Counsel for the Defendants since

16  the inception of this case.

17

18             3.     The Stipulation of Settlement provides in paragraph 4.2.2 that

19  the Parties may mutually agree to recommend to the Court a list of charitable or

20  public service organizations that focus their work on medical privacy and/or patient

21  privacy to receive the residual proceeds of the Settlement Fund as described in

22  paragraph 7.5.1(e). In order to prepare Settlement Fund recipient recommendations

23  ("Proposed Recipients") for the Court, counsel for the Parties researched several

24  non-profit or charitable organizations. Class Counsel submitted a list of

25  recommended recipients to me as Counsel for the Defendants. I worked with

26  Defendant McKesson Corporation's Compliance and Ethics group to solicit

27  additional proposals tailored to the purposes set forth in the Stipulation of

28  Settlement. After Defendants evaluated the proposals, I submitted a list of

1   recommended recipients and allocations to Class Counsel.    Counsel for all Parties

2   then engaged in an ongoing meet and confer process, during which each side's

3   recommendations were further researched and commented upon.

4

5       4.      As a result of the meet and confer process described in

6   paragraph 3 above, agreement was reached as to the list of Proposed Recipients and

7   the proposed allocations offered for the Court's consideration in the Stipulation.

8

9       5.      Counsel for Defendants believe that the Proposed Recipients

10   and proposed allocations satisfy the requirements of the Stipulation of Settlement,

11   in that they will promote patient and/or medical privacy for the benefit of the Class

12   and other California patients, and are consistent with the goals and objectives of the

13   California Confidentiality of Medical Information Act ("CMIA").

14

15       6.      I am informed and believe that the Sacramento-based

16   California Office of Privacy Protection ("COPP"), an agency of the state

17   government, has assisted individuals, businesses and organizations on issues

18   relating to California consumers' privacy since 2001.  Among all the organizations

19   focusing on privacy in California, COPP is one of the few that provides resources,

20   education and public policy recommendations both for individuals, including

21   patients, who are anxious to protect their own privacy, and for businesses that

22   process those individuals' information.  Given its 10 years of experience, I believe

23   that COPP is experienced and well-positioned to carry out its proposed projects

24   involving (a) developing recommended practices for preventing, detecting and

25   responding to medical identity theft, and (b) preparing a patient guide to preventing

26   and remedying medical identity theft, as described in its proposal.  I further believe

27   that both of these projects will advance the cause of enhancing patient privacy and

28   will provide a valuable service to the Class and the state's patient population at

1   large.    I believe that COPP's funding request, in the amount of $200,000, will

2   further the goals of the Settlement in this case, as well as advancing the public

3   policy underlying the CMIA.  Respectfully, I urge the Court to allocate funds to the

4   COPP pursuant to the Parties' Stipulation.  Attached hereto as Exhibit "1" is a true

5   and correct copy of the COPP Funding Request, including COPP's proposed use of

6   the funds, as well as a copy of Government Code section 11549.5 which created

7   COPP as an agency dedicated to protecting privacy and facilitating fair information

8   practices. The COPP website may be found at www.privacy.ca.gov.

9          7.      I am informed and believe that the Center for Democracy &

10  Technology ("CDT"), located in Washington, D.C., is a non-profit, non-partisan

11  public interest advocacy and consumer protection organization focused exclusively

12  on privacy.  I believe that one of CDT's core missions is advocacy and public

13  policy work relating to health care privacy and technology, including work relating

14  specifically to California health privacy issues.  I also believe that CDT's proposal

15  to expand its efforts to develop a workable privacy policy framework for

16  California's statewide health information exchange network, Cal eConnect, by

17  crafting principles for adoption of health information technology, will provide

18  unique resources to support this newly-emerging network.  CDT's proposal to

19  develop policy and technology solutions for California's statewide database of

20  health insurance claim data (the "all-payer claims database" or APCD) will also

21  help identify privacy-protective solutions necessary for such a wide-ranging

22  database.  I believe that CDT's funding request, in the amount of $260,000, will

23  further the goals of the Settlement in this action and advance the public policy

24  underlying the CMIA.  Respectfully, I urge the Court to allocate funds to CDT

25  pursuant to the Parties' Stipulation.  Attached hereto as Exhibit "2" is a true and

26  correct copy of the CDT's Funding Request, including CDT's proposed use of the

27  funds, as well as documents related to CDT's status as a tax-exempt entity. The

28  CDT's website may be found at www.cdt.org.

1   I swear under penalty of perjury under the laws of the United States that the

2   foregoing is true and correct.  Signed this 20th day of June, 2011, at San Francisco,

3   California.

4

5                                                  /s/ Grace A. Carter
                                                   Grace A. Carter
6

7

8   LEGAL_US_W # 68347909.1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# PROPOSED CY PRES RECIPIENT FUNDING REQUEST
### *Rodriguez et al. v. NDCHealth Corporation et al.*
U.S. District Court, Central District of California, Case No. CV 10-3522-VBF (FMOx)

1. **ORGANIZATION CONTACT INFORMATION:** *(Include name of organization, address, telephone, fax and EIN (do not include any SS#).  Also include name of the primary contact person for the application and their email address.)*

California Office of Privacy Protection (state government), 915 Capitol Mall, Suite 200, Sacramento, CA 95814, 866-785-9663 or 916-651-1057.
Joanne McNabb, Chief, joanne.mcnabb@scsa.ca.gov

2. **LIST KEY STAFF WHO WILL BE RESPONSIBLE FOR MANAGING THE FUNDS, IF AWARDED:**

Joanne B. McNabb, CIPP, CIPP/G, CIPP/IT
Chief, California Office of Privacy Protection

3. **FUNDING AMOUNT REQUESTED:** *(State the dollar amount requested.)*

$200,000

4. **SUMMARY DESCRIPTION OF APPLICANT:** *(In 200 words or less, describe applicant's organizational mission, most important accomplishment(s) in the last five years, and constituency served.)*

The California Office of Privacy Protection (COPP) is a small state agency that provides information and assistance on privacy issues to individuals and recommends privacy practices to businesses and organizations. COPP opened in 2001, with a mission of identifying consumer problems in the privacy area and encouraging the development of fair information practices.

In its 10 years of operation, COPP has developed a wealth of resources, available on its two web sites (www.privacy.ca.gov and www.cybersafety.ca.gov) on a broad range of privacy topics. Resources for consumers address identity theft, financial and health information privacy, computer security, social networking privacy, and children's online privacy and safety.

Resources for businesses recommend privacy-respectful practices on topics including data breach response, Social Security numbers, and privacy policy statements.

COPP also conducts workshops and makes presentations in seminars and conferences, averaging 70 events per year. Nearly half of the events are for consumer and community groups, with the rest being for business, government and professional organizations.

COPP coordinates with law enforcement and managed the development of a training manual on identity theft for California investigators and prosecutors.

In 2007, COPP received the HP-IAPP Privacy Innovation Award for its innovative approach to consumer protection and business outreach.

5. **DESCRIPTION OF PROPOSED PROJECT AND/OR USE OF FUNDS:** (In 500 words or less, describe what you hope to achieve with this grant, how you will accomplish the work, any deliverables that will be produced, what the most important outcome(s) will be, and how you will measure those outcome(s).)

The California Office of Privacy Protection proposes to develop two resources to assist healthcare providers, plans, insurers and patients in combatting medical identity theft: 1) "Recommended Practices for Preventing, Detecting, and Responding to Medical Identity Theft," and 2) "A Patient Guide to Preventing and Remedying Medical Identity Theft."

### 1) Recommended Practices for Preventing, Detecting, and Responding to Medical Identity Theft

The first product will be directed to providers, plans and insurers. It will describe best practices specific to different healthcare settings, such as small practices, clinics and hospitals, pharmacies, and insurers/payers. The Recommended Practices will be developed in much the same way as the Office's other similar documents. An advisory group of stakeholders, including a significant representation of patient/consumer advocates as well as representatives of different healthcare segments, will be assembled to provide input and review drafts. The healthcare industry representatives will bring their knowledge of relevant conditions and practices in their particular settings. and the consumer/patient advocates will represent the interests and needs of patients. The Office will hire a consultant with expertise in healthcare and in privacy and security, who will conduct a review of relevant research and an analysis of data flows and relevant processes in different healthcare settings, and will assist in drafting. Informed by the Fair Information Practice Principles and the California Health & Human Services Agency's Privacy & Security Advisory Board's privacy and security guidelines, and by the advice of the stakeholder group, the Office will develop a "Recommended Practices" document that provides practical guidance on policies and procedures tailored for different healthcare settings.

The Office will include a member of the Cal eConnect Policy Committee in the stakeholder group and the final product will be provided to Cal eConnect for use in setting technological and operational standards for the state's health information exchange (HIE) implementation.

### 2) A Patient Guide to Preventing and Remedying Medical Identity Theft

The patient guide will be developed from the knowledge gained in producing the Recommended Practices document. The same stakeholder advisory group will review a draft of the guide and provide their suggestions. The guide will give basic information on how to review medical records for indications of identity theft and will include checklists and sample letters to assist patients in requesting Accountings of Disclosures, copies of

their records and correction of erroneous information resulting from. The guide will be written in plain language and will be produced in English, Spanish, and Chinese.

With advice from the stakeholder group, the Office will develop and implement an outreach strategy for bringing both documents to the attention of appropriate healthcare industry segments and for encouraging the use of the documents throughout California. The project outcome will be measured by the distribution of the documents: downloads from the Office's web site, facilities providing the patient guide to patients, and organizations to which the Recommended Practices document is distributed.

## 6. DESCRIBE HOW THE APPLICANT'S PROPOSED PROJECT AND/OR USE OF FUNDS WILL PROMOTE PATIENT/MEDICAL PRIVACY IN CALIFORNIA:
*(200 words or less.)*

Medical identity theft has been called the privacy crime that can kill. Not only does it do financial harm to insurers, providers and individuals, but it also pollutes medical records with inaccurate information that can lead to erroneous diagnosis and treatment. Preventing, detecting and mitigating the damages of this crime is in the interest of all parties, from practitioners who need to know the true medical history of the patients they treat, to insurers who need to eliminate costly fraud, researchers who need to be able to rely on the accuracy of data, and patients whose health and lives are at stake.

While knowledge of this crime has grown, adequate means for addressing it are still not in place. Potential and actual victims of medical identity theft lack the rights and resources available to those affected by financial identity theft. Electronic health records offer many potential benefits; they also open an extremely sensitive type of personal information to new risks. Now is the time to define best practices for addressing medical identity theft, as the healthcare industry moves to electronic records and HIE, and the impending enhancement of the Accounting of Disclosures offers a new tool.

## 7. WHAT IS YOUR ORGANIZATIONAL BUDGET FOR THE CURRENT YEAR?

$701,000

## 8. ATTACHMENTS: *(Attach a copy of the following document(s).)*

☐ The organization's tax status determination letter from the I.R.S.

☐ Summary page only (Parts I and II) of the organization's most recently-filed I.R.S. Form 990 (Return of Organization Exempt from Income Tax).

X *OPTIONAL.* You may attach up to an additional two (2) pages of material in support of this application.

are true and correct. I further certify that I authorized this application and that, should the requested funds be awarded, the organization is committed to the completion of the projects and/or use of the funds as described herein. I understand that the amount awarded may vary from the amount requested by up to three percent (3%), which will not affect the organization's ability to complete the project(s) as described. I also understand that this application and any attachments hereto may be disclosed to the Court and may become part of the public record.

DATED: 6/17/11

_Joanne B. McNabb_
Applicant's Executive Officer

Joanne B. McNabb, Chief
California Office of Privacy Protection

**ATTACHMENTS**

Statutory authority for the California Office of Privacy Protection: California Government Code section 11549.5

11549.5.  (a) There is hereby created, in the State and Consumer Services Agency, the Office of Privacy Protection. The purpose of the Office of Privacy Protection shall be to protect the privacy of individuals' personal information in a manner consistent with the California Constitution by identifying consumer problems in the privacy area and facilitating the development of fair information practices in adherence with the Information Practices Act of 1977 (Chapter 1 (commencing with Section 1798) of Title 1.8 of Part 4 of Division 3 of the Civil Code) and to promote and protect consumer privacy to ensure the trust of the residents of this state.

   (b) The Office of Privacy Protection shall inform the public of potential options for protecting the privacy of, and avoiding the misuse of, personal information.

   (c) The Office of Privacy Protection shall make recommendations to organizations for privacy policies and practices that promote and protect the interests of the consumers of this state.

   (d) The Office of Privacy Protection may promote voluntary and mutually agreed upon nonbinding arbitration and mediation of privacy-related disputes where appropriate.

   (e) The Office of Privacy Protection shall do all of the following:

   (1) Receive complaints from individuals concerning a person obtaining, compiling, maintaining, using, disclosing, or disposing of personal information in a manner that may be potentially unlawful or violate a stated privacy policy relating to that individual, and provide advice, information, and referral, where available.

   (2) Provide information to consumers on effective ways of handling complaints that involve violations of privacy-related laws, including identity theft and identity fraud. If appropriate local, state, or federal agencies are available to assist consumers with those complaints, the office shall refer those complaints to those agencies.

   (3) Develop informational and educational programs and materials to foster public understanding and recognition of the purposes of this article.

   (4) Assist and coordinate in the training of local, state, and federal law enforcement agencies regarding identity theft and other privacy-related crimes, as appropriate.

   (5) The authority of the Office of Privacy Protection to adopt regulations under this article shall be limited exclusively to those regulations necessary and appropriate to implement subdivisions (b), (c), (d), and (e).

**Budget**: See http://www.ebudget.ca.gov/pdf/GovernorsBudget/0010/0510.pdf for fiscal year 2010-2011 budget (current year).

## Outline of Project Plan

Phase 1: Research and Recruitment (Weeks 1-12)
- Hire consultant with knowledge and experience in healthcare operations and privacy
- Consultant to conduct literature review of medical identity and prepare summary report
- Recruit stakeholder advisory group members (10 members: 4-6 healthcare, 4-5 privacy/consumer advocates)
- Consultant to prepare draft outline of issues for first advisory group meeting
- Meeting #1 of advisory group: review research summary and issues outline, identify industry players to interview

Phase 2: Drafting of Recommended Practices (Weeks 13-24)
- Consultant to interview industry members on data flow analysis and on relevant practices and procedures
- Consultant to prepare first draft of document for review by COPP
- Meeting #2 if advisory group: review draft
- Consultant to gather information as indicated and edit draft
- Meeting #3 of advisory group: review draft
- Additional meetings as needed

Phase 3: Development of Patient Guide (Weeks 16-24)
- Consultant to review available patient materials on medical identity theft and prepare summary report
- Consultant to prepare outline of contents of patient guide
- Meeting #4 of advisory group: review report on exiting patient materials and outline of guide
- Consultant to prepare draft of guide for review by COPP
- Consult to develop plan for distribution of patient guide in healthcare locations
- Meeting #5 of advisory group: review draft and distribution plan
- Consultant and COPP to prepare final version

Phase 4: Outreach (Weeks 25-ongoing)
- Translation of guide into Spanish and Chinese
- COPP to present Recommended Practices to Cal eConnect Board
- COPP to promote awareness and use of both documents in meetings and conferences of healthcare organizations such as California Hospital Association, California Association of Health Plans, California Association of Physicians Groups
- COPP to promote awareness and use of both documents through state regulatory bodies such as Medical Board of California, Pharmacy Board, Dental Board, and Department of Public Health

# EXHIBIT 2

# PROPOSED CY PRES RECIPIENT FUNDING REQUEST
### *Rodriguez et al. v. NDCHealth Corporation et al.*
U.S. District Court, Central District of California, Case No. CV 10-3522-VBF (FMOx)

**1. ORGANIZATION CONTACT INFORMATION:** *(Include name of organization, address, telephone, fax and EIN (do not include any SS#).  Also include name of the primary contact person for the application and their email address.)*

Center for Democracy & Technology (CDT), EIN 52-1905358

Main address:
1634 I Street, NW, Suite 1100
Washington, DC 20006
202-637-9800 tel, 202-637-0968 fax

San Francisco office:
55 New Montgomery Street, Suite 513
San Francisco, CA 94105
415-814-1710 tel, 415-777-1560 fax

Primary contact:  Deven McGraw, deven@cdt.org

**2. LIST KEY STAFF WHO WILL BE RESPONSIBLE FOR MANAGING THE FUNDS, IF AWARDED:**

Deven McGraw, Director, CDT's Health Privacy Project
James X. Dempsey, Vice President for Public Policy and head of CDT West

**3. FUNDING AMOUNT REQUESTED:** *(State the dollar amount requested.)*

$260,000

**4. SUMMARY DESCRIPTION OF APPLICANT:** *(In 200 words or less, describe applicant's organizational mission, most important accomplishment(s) in the last five years, and constituency served.)*

The Center for Democracy & Technology is a 501(c)(3) non-profit consumer advocacy organization.  Founded in 1994, CDT has offices in Washington, DC and San Francisco, CA.  CDT is widely regarded as one of the most credible and effective organizations working on issues at the intersection of public policy and technology.

In the privacy field, CDT works for robust protections through government policy, business practices, technology design, and consumer awareness. In the past five years, we successfully led the Anti-Spyware Coalition in reducing the malware in consumer computers, shaped the development of privacy policy at the Federal Trade Commission, and worked through the California Public Utilities Commission for adoption of privacy rules for the Smart Grid.

CDT's Health Privacy Project is the leading consumer organization advocating for comprehensive health privacy protections as the nation moves rapidly to adopt electronic medical records. CDT led the fight to secure critical health privacy protections in the 2009 federal stimulus legislation, the most significant expansion of health privacy rules in more than a decade. In California, CDT works closely with Consumers Union to organize California consumer groups on health privacy issues and to advocate for sound health privacy policies and best practices in the state.

5. **DESCRIPTION OF PROPOSED PROJECT AND/OR USE OF FUNDS:** *(In 500 words or less, describe what you hope to achieve with this grant, how you will accomplish the work, any deliverables that will be produced, what the most important outcome(s) will be, and how you will measure those outcome(s).)*

California is developing three new programs for the electronic collection and exchange of health data. These initiatives hold tremendous promise for improving health care, but they also pose serious privacy risks. They require the development of thoughtful solutions that serve consumers dual interests' in protecting privacy and in facilitating adoption of electronic health data systems.

CDT proposes to develop and promote implementation of robust but workable privacy policies and technology architectures for these initiatives:

1. California is developing a statewide health information exchange network, Cal eConnect, to support the exchange of patient data by health care providers. However, the initiative has so far failed to adopt privacy and security polices that would adequately protect patient privacy. For the past year CDT has been working with Consumer's Union in California to develop and advocate a workable privacy policy framework for the Cal eConnect health information exchange. We have proposed a solution to the hard issue of patient consent and we have brought together a wide range of California consumer and patient advocacy groups to develop principles for adoption of health information technology in California. With cy pres support, we would continue and expand this effort.

2. California is considering creating a state-wide database of claims data from all health insurance plans (known as an "all-payer claims database" or APCD) for the purpose of performing research on health utilization and cost trends. The routine collection of such data into a central database raises significant privacy and security concerns. We believe that the benefits to be derived from such a system

can be achieved in ways that are more privacy protective, such as through the use
of a distributed research network, where information remains with the data
sources (in this case, the health insurers) but can be accessed in anonymized
ways for the purposes of data analysis. And even if data centralization is found to
be necessary to conduct certain types of analysis, it is critical that any databases
created be subject to clear privacy and security rules. With funding from the cy
pres, CDT will focus specifically on developing comprehensive and thoughtful
policy and technology solutions for California's APCD efforts.

3. California is required by the Affordable Care Act (health reform) to implement a
statewide health insurance exchange (HIX) by 2014. The purpose of the HIX is to
connect individuals without health insurance to potential public and private
insurance options, as well as to inform individuals of any financial subsidies for the
purchase of insurance for which they may be eligible. To fulfill these goals, the
state HIX will need to collect a significant amount of personal, financial and health
information from individuals to effectively connect them to viable health insurance
options. HIXs should be subject to comprehensive privacy and security protections
that ensure effective operation of the exchange while prohibiting unrelated and
inappropriate uses of data. With support from the cy pres, we would work to
develop a comprehensive privacy and security policy and technology framework
for California's HIX.

6. **DESCRIBE HOW THE APPLICANT'S PROPOSED PROJECT AND/OR USE OF
FUNDS WILL PROMOTE PATIENT/MEDICAL PRIVACY IN CALIFORNIA:**
*(200 words or less.)*

Health privacy in California is at a critical juncture: The development of the three
health IT systems described above will radically change the way that sensitive
patient medical data is collected, stored, exchanged and used in the state. The
three initiatives described above are critical to improving the quality of treatment,
lowering costs and addressing population health concerns. They represent the
future direction of medical/health data in California and nationwide. However, all
three initiatives currently suffer from the lack of consensus around how to protect
privacy and security.

CDT proposes to apply its unique combination of skills in technology, law and
policy to address the privacy issues associated with these projects. Our goal is to
develop concrete recommendations that can be incorporated into the design and
governance of these projects. We have a history of working with all parties,
including policymakers, industry and other consumer advocates. In California, we
have earned the respect and trust of other California consumer organizations and
policymakers. The solutions we develop and advocate will be directly responsive
to the policy and technical needs of the proposed systems. If adopted, our
recommendations will ensure that these initiatives strongly protect the privacy of
Californians.

## 7. WHAT IS YOUR ORGANIZATIONAL BUDGET FOR THE CURRENT YEAR?

$3,852,861

## 8. ATTACHMENTS: *(Attach a copy of the following document(s).)*

[x] The organization's tax status determination letter from the I.R.S.

[x] Summary page only (Parts I and II) of the organization's most recently-filed I.R.S. Form 990 (Return of Organization Exempt from Income Tax).

[x] *OPTIONAL.* You may attach up to an additional two (2) pages of material in support of this application.

I certify that the information contained herein and any attachments hereto are true and correct. I further certify that I authorized this application and that, should the requested funds be awarded, the organization is committed to the completion of the projects and/or use of the funds as described herein. I understand that the amount awarded may vary from the amount requested by up to three percent (3%), which will not affect the organization's ability to complete the project(s) as described. I also understand that this application and any attachments hereto may be disclosed to the Court and may become part of the public record.

DATED:___June 15, 2011___

_____
Applicant's Executive Officer

_____
Leslie Harris
*(print or type name of Applicant's Executive Officer)*

**Internal Revenue Service**                    Department of the Treasury

Washington, DC 20224

Center for Democracy and Technology
1001 G St., NW, Ste. 700 East
Washington, DC  20001

Person to Contact:
                    Charles Gillette
Telephone Number:
                    (202)622-7787
Refer Reply to:
                    CP:E:EO:T:5

Date:

SEP 2 9 1995

Employer Identification Number: 52-1905358
Key District: Baltimore
Accounting Period Ending: December 31
Foundation Status Classification: 509(a)(1) & 170(b)(1)(A)(vi)
Advance Ruling Period Begins: December 6, 1994
Advance Ruling Period Ends: December 31, 1998
Form 990 Required: Yes

Dear Applicant:

    Based on the information supplied, and assuming your
operations will be as stated in your application for recognition
of exemption, we have determined you are exempt from federal
income tax under section 501(a) of the Internal Revenue Code as
an organization described in section 501(c)(3).

    Because you are a newly created organization, we are not now
making a final determination of your foundation status under
section 509(a) of the Code.  However, we have determined that you
can reasonably be expected to be a publicly supported
organization described in the section(s) indicated above.

    Accordingly, you will be treated as a publicly supported
organization, and not as a private foundation, during an advance
ruling period.  This advance ruling period begins and ends on the
dates indicated above.

    Within 90 days after the end of your advance ruling period,
you must submit to your key district office information needed to
determine whether you have met the requirements of the applicable
support test during the advance ruling period.  If you establish
that you have been a publicly supported organization, you will be
classified as a section 509(a)(1) or 509(a)(2) organization as
long as you continue to meet the requirements of the applicable
support test.  If you do not meet the public support requirements
during the advance ruling period, you will be classified as a
private foundation for future periods.  Also, if you are
classified as a private foundation, you will be treated as a
private foundation from the date of your inception for purposes
of sections 507(d) and 4940.

2

Center for Democracy and Technology

Donors may deduct contributions to you as provided in section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to you or for your use are deductible for federal estate and gift tax purposes if they meet the applicable provisions of Code sections 2055, 2106, and 2522.

Donors (including private foundations) may rely on the advance ruling that you are not a private foundation until 90 days after your advance ruling period ends. If you submit the required information within the 90 days, donors may continue to rely on the advance ruling until we make a final determination of your foundation status. However, if notice that you will no longer be treated as the type of organization indicated above is published in the Internal Revenue Bulletin, donors may not rely on this advance ruling after the date of such publication. Also, donors (other than private foundations) may not rely on the classification indicated above if they were in part responsible for, or were aware of, the act that resulted in your loss of that classification, or if they acquired knowledge that the Internal Revenue Service had given notice that you would be removed from that classification. Private foundations may rely on the classification as long as you were not directly or indirectly controlled by them or by disqualified persons with respect to them. However, private foundations may not rely on the classification indicated above if they acquired knowledge that the Internal Revenue Service had given notice that you would be removed from that classification.

If your sources of support, or your purposes, character, or method of operation change, please let your key district know so that office can consider the effect of the change on your exempt status. In the case of an amendment to your organizational document or bylaws, please send a copy of the amended document or bylaws to your key district. Also, you should inform your key district office of all changes in your name or address.

As of January 1, 1984, you are liable for taxes under the Federal Insurance Contributions Act (social security taxes) on remuneration of $100 or more you pay to each of your employees during a calendar year. You are not liable for the tax imposed under the Federal Unemployment Tax Act.

Organizations that are not private foundations are not subject to the excise taxes under Chapter 42 of the Code. However, if it is determined that you are a private foundation, you will be subject to excise taxes under Chapter 42. You also may be subject to other federal excise taxes. If you have any questions about excise, employment, or other federal taxes, please contact your key district office.

3

Center for Democracy and Technology

Contribution deductions are allowable to donors only to the
extent that their contributions are gifts, with no consideration
received.  Ticket purchases and similar payments in conjunction
with fund-raising events may not necessarily qualify as fully
deductible contributions, depending on the circumstances.  If
your organization conducts fund-raising events such as benefit
dinners, shows, membership drives, etc., where something of value
is received in return for payments, you are required to provide a
written disclosure statement informing the donor of the fair
market value of the specific items or services being provided.
To do this you should, in advance of the event, determine the
fair market value of the benefit received and state it in your
fund-raising materials such as solicitations, tickets, and
receipts in such a way that the donor can determine how much is
deductible and how much is not.  Your disclosure statement should
be made, at the latest, at the time payment is received.  Subject
to certain exceptions, your disclosure responsibility applies to
any fund-raising circumstance where each complete payment,
including the contribution portion, exceeds $75.  In addition,
donors must have written substantiation from the charity for any
charitable contribution of $250 or more.  For further details
regarding these substantiation and disclosure requirements, see
the enclosed copy of Publication 1771.  For additional guidance
in this area, see Publication 1391, Deductibility of Payments
Made to Organizations Conducting Fund-Raising Events, which is
available at many IRS offices or by calling 1-800-TAX-FORM
(1-800-829-3676).

In the heading of this letter we have indicated whether you
must file Form 990, Return of Organization Exempt from Income
Tax.  If Yes is indicated, you are required to file Form 990 only
if your gross receipts each year are normally more than $25,000.
If your gross receipts each year are not normally more than
$25,000, we ask that you establish that you are not required to
file Form 990 by completing Part I of that Form for your first
year.  Thereafter, you will not be required to file a return
until your gross receipts exceed the $25,000 minimum.  For
guidance in determining if your gross receipts are "normally" not
more than the $25,000 limit, see the instructions for the Form
990.  If a return is required, it must be filed by the 15th day
of the fifth month after the end of your annual accounting
period.  A penalty of $10 a day is charged when a return is filed
late, unless there is reasonable cause for the delay.  The
maximum penalty charged cannot exceed $5,000 or 5 percent of your
gross receipts for the year, whichever is less.  This penalty may
also be charged if a return is not complete, so please be sure
your return is complete before you file it.

You are required to make your annual return available for
public inspection for three years after the return is due.  You

4

Center for Democracy and Technology

are also required to make available a copy of your exemption application, any supporting documents, and this exemption letter. Failure to make these documents available for public inspection may subject you to a penalty of $10 per day for each day there is a failure to comply (up to a maximum of $5,000 in the case of an annual return). See Internal Revenue Service Notice 88-120, 1988-2 C.B. 454, for additional information.

You are not required to file federal income tax returns unless you are subject to the tax on unrelated business income under section 511 of the Code. If you are subject to this tax, you must file an income tax return on Form 990-T, Exempt Organization Business Income Tax Return. In this letter we are not determining whether any of your present or proposed activities are unrelated trade or business as defined in section 513 of the Code.

In this letter, we have not determined the effect on your tax-exempt status of financing your activities with the proceeds of tax-exempt bonds since you have not indicated that you intend to use such methods now or in the future.

You need an employer identification number even if you have no employees. Please use that number on all returns you file and in all correspondence with the Internal Revenue Service.

We are informing your key district office of this ruling. Because this letter could help resolve any questions about your exempt status and foundation status, you should keep it in your permanent records.

If you have any immediate questions about this ruling, please contact the person whose name and telephone number are shown in the heading of this letter. For other matters, including questions concerning reporting requirements, please contact your key district office.

Sincerely,

Garland A Carter

Garland A. Carter
Chief, Exempt Organizations
Technical Branch 5

Enclosures:
    Form 872
    Pub 1771

** PUBLIC DISCLOSURE COPY **

OMB No. 1545-0047

# Form **990**

Department of the Treasury
Internal Revenue Service

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation)

▶ The organization may have to use a copy of this return to satisfy state reporting requirements.

## 2009

Open to Public Inspection

**A** For the 2009 calendar year, or tax year beginning _____ and ending _____

| B Check if applicable: | Please use IRS label or print or type. See Specific Instructions. | C Name of organization | D Employer identification number |
|---|---|---|---|
| ☐ Address change | | CENTER FOR DEMOCRACY AND TECHNOLOGY | |
| ☐ Name change | | Doing Business As | 52-1905358 |
| ☐ Initial return | | Number and street (or P.O. box if mail is not delivered to street address)  Room/suite 1100 | E Telephone number |
| ☐ Termin-ated | | 1634 I STREET, N.W. | 202-637-9800 |
| ☐ Amended return | | City or town, state or country, and ZIP + 4 | G Gross receipts $ 4,161,209. |
| ☐ Applica-tion pending | | WASHINGTON, DC  20006-4003 | |

F Name and address of principal officer: LESLIE HARRIS
SEE ABOVE

H(a) Is this a group return for affiliates? ☐ Yes ☒ No
H(b) Are all affiliates included? ☐ Yes ☐ No
If "No," attach a list. (see instructions)

**I** Tax-exempt status: ☒ 501(c) ( 3 ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J** Website: ▶ WWW.CDT.ORG

H(c) Group exemption number ▶

**K** Form of organization: ☒ Corporation ☐ Trust ☐ Association ☐ Other ▶   **L** Year of formation: 1994  **M** State of legal domicile: DC

## Part I   Summary

| | | | |
|---|---|---|---|
| 1 | Briefly describe the organization's mission or most significant activities: SEE PART III, LINE 1 | | |
| 2 | Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | | |
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 9 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 7 |
| 5 | Total number of employees (Part V, line 2a) | 5 | 25 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 7 |
| 7a | Total gross unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0. |
| b | Net unrelated business taxable income from Form 990-T, line 34 | 7b | 0. |

| | | Prior Year | Current Year |
|---|---|---|---|
| 8 | Contributions and grants (Part VIII, line 1h) | 6,301,014. | 2,392,488. |
| 9 | Program service revenue (Part VIII, line 2g) | 10,000. | |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 25,561. | 26,127. |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 55,283. | 64,974. |
| 12 | Total revenue - add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 6,391,858. | 2,483,589. |
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1-3) | | |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) | | |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 1,807,991. | 2,644,004. |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 136,500. | |
| b | Total fundraising expenses (Part IX, column (D), line 25) ▶ 346,802. | | |
| 17 | Other expenses (Part IX, column (A), lines 11a-11d, 11f-24f) | 901,813. | 1,526,524. |
| 18 | Total expenses. Add lines 13-17 (must equal Part IX, column (A), line 25) | 2,846,304. | 4,170,528. |
| 19 | Revenue less expenses. Subtract line 18 from line 12 | 3,545,554. | -1,686,939. |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| 20 | Total assets (Part X, line 16) | 5,802,787. | 4,126,275. |
| 21 | Total liabilities (Part X, line 26) | 164,159. | 252,069. |
| 22 | Net assets or fund balances. Subtract line 21 from line 20 | 5,638,628. | 3,874,206. |

## Part II   Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | ▶ _(signature)_   12-11-10 |
|---|---|
| | Signature of officer   Date |
| | LESLIE HARRIS, PRESIDENT |
| | Type or print name and title |

| Paid Preparer's Use Only | Preparer's signature ▶ David F. _(signature)_ CPA | Date 11-8-10 | Check if self-employed ▶ ☐ | Preparer's identifying number (see instructions) |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP + 4 ▶ | GELMAN, ROSENBERG & FREEDMAN  4550 MONTGOMERY AVE., SUITE 650 NORTH  BETHESDA, MARYLAND 20814-2930 | EIN ▶ | |
| | | | Phone no. ▶ (301) 951-9090 | |

May the IRS discuss this return with the preparer shown above? (see instructions) ............ ☒ Yes ☐ No

932001 02-04-10   LHA   For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.   Form **990** (2009)



KEEPING THE INTERNET
OPEN • INNOVATIVE • FREE

CENTER FOR DEMOCRACY
& TECHNOLOGY

## Background: CDT's Work on Health Privacy

The goal of CDT's Health Privacy Project is to research, develop and advocate for credible, balanced policies that protect patient privacy while also supporting the flow of information to improve health care. While the project takes a strong advocacy position, it also works with consumer advocates, health care providers, government, employers, technologists, and developers and vendors of products and services, to promote acceptance and implementation of workable privacy policy solutions.  Our activities include:

- Researching and publishing in-depth reports and briefing materials on key aspects of health privacy;
- Convening stakeholders and conducting outreach and advocacy to build support for privacy guidelines and best practices;
- Bringing CDT's insight, credibility, and consumer perspective to bear on legislative proposals, regulatory initiatives, and the development of best practices and guides for the health care sector.

When the Project was first launched, the U.S. Congress was debating the HITECH Act, which was intended to spur the health care sector's adoption of information technology ("health IT") in order to improve quality of care, cut costs, and increase patient participation in their own healthcare.  The CDT health privacy team immediately became key participants in the shaping of the legislation. Within three months of project launch, CDT was asked to testify on health privacy before the House Energy & Commerce Health Subcommittee and again in the following month before the House Ways & Means Health Subcommittee.  CDT also testified as the sole health privacy expert at a Senate Judiciary Committee Hearing on Health IT and Privacy, which took place in January 2009 during active consideration of the HITECH legislation.  At each opportunity, CDT stressed the need to establish a comprehensive privacy and security policy framework to govern health IT and recommended specific protections needed to achieve that goal.

In addition to testifying before Congress, CDT provided extensive technical assistance to the committee staff. CDT's testimony and analysis and our extensive discussions with stakeholders bore fruit with the inclusion of major privacy reforms in the HITECH Act, which was rolled into the economic stimulus package (ARRA) enacted in February 2009. The privacy language in the HITECH Act, reflecting key CDT recommendations, was the most significant expansion of health privacy protections in a decade. Some hard issues remained unaddressed and considerable work was left to the regulatory process, but HITECH undoubtedly marked the beginning of a new era for health privacy.

Since 2009, CDT has been deeply involved in the implementation of the provisions of the HITECH Act, including the federal breach notification requirement and the rules defining how health care providers can qualify for financial incentives to adopt health IT.

## CDT's Work on Health Privacy in California

Similarly, in California, the legal environment still fails to provide comprehensive or fully effective protections for consumers' health data.  Although California law before HITECH was stronger than federal law, recurring data breaches have revealed weaknesses in California's legal protections and highlighted the need for better implementation of existing requirements.  In the meantime, California is developing several statewide programs that will collect and share health data in new ways, posing unique and unresolved challenges for the security and privacy of patient data.  These California initiatives, which we discuss in further detail below, include a statewide infrastructure to promote electronic health information exchange among the state's doctors and hospitals.

After the enactment of HITECH, CDT undertook a project to educate Californians about the impact of the federal law on the privacy and security of health information in California. We drafted and published an extensive legal analysis and chart comparing the current HIPAA rules, the California Confidentiality of Medical Information Act (CMIA), and the privacy changes in ARRA.  These materials were condensed in an Issue Brief on "The Impact of the Federal Stimulus Efforts on the Privacy and Security of Health Information in California" published by the California Health Care Foundation in 2009.

CDT has established a close working relationship with Consumer's Union in California in order to facilitate greater consumer involvement in health IT implementation efforts in California and to better coordinate state and national initiatives.  CDT and Consumer's Union worked together on comments to the California Privacy and Security Advisory Board (CalPSAB) raising serious questions about some of CalPSAB's early recommendations on establishing a stronger role for patient consent in health care. We explained that the CalPSAB approach, while well intended, could have had the perverse effect of halting the flow of health data even for core treatment purposes and would have provided a significant disincentive for providers to adopt electronic medical records.

**Overview of Current Health Privacy Priorities**

Notwithstanding the progress in recent years, much work still remains to ensure that consumers reap the significant benefits of health IT.  Both nationally and in California, policymakers are struggling with the role that individual consent should play in a comprehensive framework of privacy protections.  Health information shared with entities not covered by HIPAA, such as by consumers using personal health records (PHRs) and Internet-based health applications and social networking sites, is not covered by any adequately comprehensive set of privacy and security protections.  We lack a consistent and workable approach to ensuring the availability of health data for secondary purposes such as research and public health.  A change in administration in California is creating uncertainty as to the fate of privacy and security policy initiatives in the state.

Currently, major areas of focus for CDT's Health Privacy Project include the appropriate role of patient consent in protecting privacy, enforcement of privacy protections, standards for access to large data sets by researchers, providing consumers with electronic access to their health information, and the role of standards and certification in addressing privacy.

2